Douglas V. PFINGSTON,
Plaintiff–Appellant,

and

United States of America, Plaintiff,

v.

RONAN ENGINEERING CO.; Fleming Engineering Inc., Defendants,

and

Los Angeles Metropolitan Transportation Authority,
Defendant–Appellee.

Douglas V. Pfingston, aka Seal 1, Plaintiff–Appellant,

and

United States of America, aka Seal 2, Plaintiff,

v.

Ronan Engineering Co., aka Seal A; Fleming Engineering Inc., aka Seal B, Defendants,

and

Los Angeles Metropolitan Transportation Authority, aka MTA, aka Metro, aka Seal C, Defendant–Appellee.

Nos. 00–56721, 00–57166.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Filed March 19, 2002.

Gary R. Carlin, Long Beach, CA; John Wallace (argued), Agoura Hills, CA, for the plaintiff-appellant.

Lloyd W. Pellman, County Counsel; Steven J. Carnevale, Assistant County Counsel; Richard P. Chastang (argued), Principal Deputy County Counsel; Los Angeles, CA, for the defendant-appellee.

Before: O'SCANNLAIN, SILVERMAN, Circuit Judges, and REED, District Judge.*

O'SCANNLAIN, Circuit Judge.

We must decide, among other things, whether the False Claims Act authorizes an award of attorneys' fees against another attorney.

## I

In October 1993, the Los Angeles Metropolitan Transit Authority (the "MTA") selected Fleming Engineering Company ("Fleming") to replace thirteen underground fuel storage tanks. Fleming also agreed to construct a fuel leak detection system in connection with installation of the new tanks. The MTA received federal funding for the project.

Douglas Pfingston, a Fleming subcontractor employee, inspected the leak detection system shortly after its completion in 1995. The system was operational, despite not being certified by the Fire Department and the County Public Works Department. Furthermore, Pfingston observed that the detection system was in "full red alert," meaning that fuel was leaking, yet, the system failed to shut off the flow of fuel, contrary to its design.

Pfingston immediately reported his observations to Tanzeem Rizvi, the MTA's Supervising Project Engineer.[1] Rizvi told Pfingston that he had "opened a can of worms" and that he should "back off." Rizvi explained that the federal government had provided a "great deal" of funding for the project. Rizvi stated that at the time the MTA received funding, it knew, and failed to disclose, that the detection system suffered from a serious design defect. Rizvi also stated that the MTA had promised the government that it would obtain proper certification before operating the tanks.

Pfingston refused to keep quiet, pressing his complaint with the FBI, the Los Angles Fire Department, County Works Department, and various other government agencies. Pfingston was fired shortly after his initial complaint. Despite his misgivings, the tanks and detection system have operated without any reported problems.

Pfingston filed a qui tam action against the MTA under the *False Claims Act*, 31 U.S.C. § 3729(a) and California's False Claims Act, Cal. Gov't Code § 12651(a). The United States declined to exercise its right to participate in the action, 31 U.S.C. § 3730(b)(4). The district court granted the MTA's motions for summary judgment and attorneys' fees. Contrary to the MTA's request, the court specifically ordered that the attorneys' fees be paid by Pfingston's attorney.

## II

■ The False Claims Act, 31 U.S.C. § 3729(a)(1), prohibits persons from know-

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. The Engineer's name is also spelled "Rizvi" in parts of the record.

ingly presenting a false or fraudulent claim for payment or approval by the federal government. E.g., *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 461 (9th Cir.1999). Under the Act, a prima facie case requires proof that (1) the defendant submitted a claim to the United States, (2) the claim was false or fraudulent, and (3) the defendant knew the claim was false or fraudulent. *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir.2001); *Oliver*, 195 F.3d at 461. "False" does not mean "scientifically untrue, but a lie." *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir.1992).[2]

Pfingston alleges that at the time the MTA obtained federal funding for the tank project, it failed to disclose a known, serious design defect in the leak detection system. Further, he alleges that the MTA obtained federal funding with the false promise that the tanks would be properly certified by state and local officials before becoming operational.

■ In opposing the MTA's motion for summary judgment, Pfingston relied upon his own affidavit, which recounts his observations of the leak detection system and his conversation with Rizvi.[3] The MTA claimed that Rizvi's statements are inadmissible hearsay. Pfingston disagreed, contending that the statements are admissible as statements against interest, Fed. R.Evid. 804(b)(3). The district court failed to rule on the MTA's hearsay objection, and gave no indication as to whether it considered the statements admissible.

On appeal, Pfingston has changed course, and now argues that Rizvi's statements are admissible as statements of a party opponent, Fed.R.Evid. 801(d)(2)(D). He also argues that the MTA waived any hearsay objection by failing to object adequately in the district court.

A

■ Pfingston argues that the MTA waived its hearsay objection by failing to move to strike his affidavit below. Federal Rule of Civil Procedure 56(e) provides that summary judgment affidavits "shall set forth such facts as would be admissible in evidence." In order to preserve a hearsay objection, a party must either move to strike the affidavit or otherwise lodge an objection with the district court. E.g., *Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir.), amended by 828 F.2d 1445 (9th Cir.1987); *Bieghler v. Kleppe*, 633 F.2d 531, 534 (9th Cir.1980); *Scharf v. United States Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir.1979). In other words, a motion to strike is not necessarily required to preserve a hearsay objection. While the MTA failed to move to strike Pfingston's affidavit, it filed an "Objection to Evidence Offered by Plaintiff in Opposition to Motion for Summary Judgment." The MTA's filing adequately put the district court on notice of its objection, and thus, preserves the issue for appeal. See, e.g., *Scharf*, 597 F.2d at 1243.

B

■ We decline to address Pfingston's new contention that Rizvi's state-

2. Pfingston also asserts a claim under California's False Claims Act, Cal. Gov't Code § 12651(a). He concedes that for purposes of this appeal, there is no material difference between the California and federal acts.

3. Pfingston also submitted an affidavit from a third-party witness who recounted a similar conversation with Rizvi. However, Pfingston submitted the affidavit in connection with the

MTA's motion for attorneys' fees, well after the district court had granted summary judgment. We therefore decline to consider this affidavit in reviewing the district court's grant of summary judgment. See, *e.g.*, *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985).

ments are admissible as those of a party opponent. As an appellate court, we ordinarily do not review issues raised for the first time on appeal. *E.g., Scott v. Ross,* 140 F.3d 1275, 1283 (9th Cir.1998); *Bolker v. Comm'r,* 760 F.2d 1039, 1042 (9th Cir. 1985). Nonetheless, we have discretion to review issues not previously raised if "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker,* 760 F.2d at 1042.

■ The factual record is not adequately developed to address Pfingston's new argument on appeal. A statement of a party opponent is admissible if it "concern[s] a matter within the scope of the ... employment, made during the [employment]." Fed.R.Evid. 801(d)(2)(D). Because Pfingston seeks admission of Rizvi's statements, he bears the burden of proof of admissibility. *E.g., Sana v. Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 1045 (9th Cir.1999); *Oki Am., Inc. v. Microtech Int'l, Inc.,* 872 F.2d 312, 314 (9th Cir. 1989).

The record does not clearly reveal that Rizvi's statements concern a matter within the scope of his employment. While Pfingston identifies Rizvi as the MTA's "Project Engineer," he does not provide any description of Rizvi's job responsibilities. Specifically, he does not show that Rizvi's job duties had anything to do with the MTA's request for federal funding. *E.g., In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* 906 F.2d 432, 458 (9th Cir.1990) (explaining that the proponent of evidence must show that the statement concerned the employee's job responsibilities or duties). In the absence of any such evidence, we decline to address Pfingston's new argument that Rizvi's statements are admissible as those of a party opponent.

### C

■ We also conclude that Pfingston has not shown that Rizvi's statements are admissible under the statement against interest exception. It is unclear whether the district court agreed with Pfingston's contention that the statements are admissible under this exception. In any event, even if the district court determined that the statements were admissible, it abused its discretion. See *Block v. City of Los Angeles,* 253 F.3d 410, 419 (9th Cir.2001). The statement against interest exception requires that the declarant be "unavailable." Fed.R.Evid. 804(b)(3). Pfingston has made absolutely no showing as to why Rizvi was "unavailable" to testify. For example, Pfingston has proffered no evidence that Rizvi refuses or is unable to testify. See Fed.R.Evid. 804(a); *United States v. Pena–Gutierrez,* 222 F.3d 1080, 1088 (9th Cir.1999). Accordingly, Rizvi's statements are not admissible under the statement against interest exception.

### D

■ For the foregoing reasons, Rizvi's statements must be excluded as inadmissible hearsay. As such, Pfingston offers only his own observations in support of his allegations. Pfingston observed that the leak detection system was malfunctioning and that the tanks were operational despite not being certified by the Fire and County Public Works Departments. His observations fall far short of setting forth a prima facie case under the False Claims Act. Specifically, his observations do not show that the MTA made a "false or fraudulent" statement to the federal government at the time of funding. See e.g., *Mackby,* 261 F.3d at 826; *Oliver,* 195 F.3d at 461. We therefore conclude that summary judgment was properly granted.

### III

■ Pfingston complains that the MTA improperly delayed disclosing certain information. In moving for summary judgment, the MTA submitted declarations from several MTA employees as well as Fire Department certificates. Pfingston charges that the MTA failed to identify the employees and the certificates as part of initial disclosure. See United States Dist. Court for the Central Dist. of Cal. Local R. 6.2; see also Fed.R.Civ.P. 26(a)(1).

Pfingston, however, cannot show any resulting prejudice. Pfingston does not claim that he was unfairly surprised by the discovery, such that he was not able to oppose summary judgment adequately. At best, the district court should have barred the MTA from using this information at summary judgment. See Local R. 6.3.2; see also Fed.R.Civ.P. 37(c)(1). However, Pfingston's action fails apart from any evidence submitted by the MTA. Pfingston simply has not proffered sufficient evidence to make out a prima facie case. The MTA would be entitled to summary judgment even it were barred from using the challenged evidence at summary judgment. Therefore, the MTA's alleged delay in disclosure is irrelevant. See *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001).

### IV

■ Pfingston claims that the district court improperly denied his Rule 56(f) motion for a continuance of the summary judgment motions pending additional discovery. Pfingston filed this action in September 1997. He waited nearly three years to commence discovery, on July 27, 2000, only two weeks prior to the discovery cutoff set by the court's pretrial order. Pfingston sought to depose three MTA employees as well as to inspect the tanks and detection system. He noticed the inspection for August 3 and the depositions for August 4. The MTA immediately objected, explaining that Pfingston's proposed dates did not comply with the time requirements of Federal Rule Civil Procedure 34(b). Pfingston did not respond to the MTA's objection and failed to move to compel discovery. Instead, Pfingston filed a Rule 56(f) motion on August 21, 2000, only a week prior to the date of the summary judgment hearing.

■ The court did not abuse its discretion in failing to grant Pfingston a continuance pending additional discovery. The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion. *E.g., Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir.1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment"); *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372 (9th Cir.1985) (concluding that court properly denied Rule 56(f) because the "[f]ailure to take further depositions apparently resulted largely from plaintiffs' own delay"). Pfingston waited nearly three years to conduct any discovery and filed a defective request only two weeks prior to discovery cutoff. Further, Pfingston did not promptly file his Rule 56(f) motion after the MTA indicated it would not comply with his request. In these circumstances, the district court did not abuse its discretion in denying Pfingston's motion.

### V

■ Pfingston's attorney appeals the award of attorneys' fees, which are specifically to be paid by him. In qui tam cases, a court may award attorneys' fees against the plaintiff if the "action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). This standard tracks our

formulation as to when fees are appropriate under 42 U.S.C. § 1988 to a prevailing defendant. See, e.g., *Maag v. Wessler*, 993 F.2d 718, 719 (9th Cir.1993) ("A court may grant attorney's fees to a defendant under § 1988 only under the limited circumstances where the action is frivolous, unreasonable, or without foundation." (internal quotation marks omitted)). As such, § 1988 cases are instructive in deciding whether fees are appropriate under the False Claims Act.[4]

■ An action is "clearly frivolous" when "the result is obvious or the appellant's arguments of error are wholly without merit." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994) (articulating standard under § 1988); see also *Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir.2001) (stating similar standard under the False Claims Act). An action is "clearly vexatious" or "brought primarily for purposes of harassment" when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant. E.g., *Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir.1988) (stating standard under § 1988).

The MTA moved for attorneys' fees under the False Claims Act, requesting that fees be awarded against Pfingston's counsel as well as Pfingston himself. At a hearing on the motion, the MTA withdrew its request for fees against Pfingston's attorney. Notwithstanding the MTA's change of position, the district court awarded $10,000 in fees to be paid solely by Pfingston's attorney. The court provided no explanation as to why fees were warranted, why $10,000 was an appropriate amount, or why the fees were to be paid by the attorney.

■ The plain language of the False Claims Act does not indicate that fees may be awarded against an attorney. Rather, the statute merely provides, that "the court may award to the defendant its reasonable attorneys' fees and expenses." 31 § 3730(d)(4). Congress adopted a standard for fees that is directly analogous to that of 42 U.S.C. § 1988. Section 1988 does not authorize the award of fees against an attorney. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Foster v. Mydas Assocs., Inc.* 943 F.2d 139, 142 (1st Cir.1991); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276 (3d Cir. 1990); *Hamer v. County of Lake*, 819 F.2d 1362, 1370 (7th Cir.1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). But see *Strain v. Kaufman County Dist. Attorney's Office*, 23 F.Supp.2d 698, 702 (N.D.Tex.1998) (awarding fees against an attorney personally under § 1988). In the absence of any indication that Congress intended a different result, we hold that the award of attorneys' fees against an attorney is not authorized by the False Claims Act.[5]

■ We remand for the district court to reconsider whether attorneys' fees are warranted. We stress that the district court must make detailed findings in support of any award. See, e.g., *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir.1995). The award of fees under

---

**4.** The False Claims Act's legislative history also indicates that Congress viewed the § 1988 standard as analogous. See S.Rep. No. 99–345, at 29 ("[The False Claims Act] standard reflects that which is found in § 1988 ..."), reprinted in 1986 U.S.C.C.A.N. 5266, 5294.

**5.** Of course, an attorney may be liable for fees under separate authority, such as 28 U.S.C. § 1927.

the False Claims Act is reserved for rare and special circumstances. We are far from convinced that this case presents such circumstances.

However, we leave for the district court the task of making a determination in the first instance.

AFFIRMED in part, VACATED in part, and REMANDED. Each party shall bear its own costs in this appeal.