**Laura A. CYR, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE CO., et al., Defendants.**

**No. CV 06–01585 DDP (RCx).**

United States District Court, C.D. California.

Nov. 19, 2007.

Joseph A. Creitz, Joseph A. Creitz Law Offices, Joseph A. Garofolo, Joseph A. Garofolo Law Offices, San Francisco, CA, for Plaintiff.

Daniel W. Maguire, Keiko J. Kojima, Michael B. Bernacchi, Burke Williams and Sorensen, Los Angeles, CA, David L. Nye, Nye Peabody Stirling and Hale, Santa Barbara, CA, for Defendants.

### Order Granting Summary Judgment In Favor of Plaintiff Cyr

DEAN D. PREGERSON, District Judge.

This matter comes before the Court on the parties' cross motions for summary adjudication. After reviewing the materials submitted by the parties and considering the arguments therein, the Court grants summary judgment for Plaintiff Cyr.

## I. BACKGROUND

Plaintiff Laura Cyr brings this Employee Retirement Income Security Act ("ERISA") suit seeking additional long term disability ("LTD") benefits based on an adjusted salary and declaratory relief clarifying her rights to future benefits against her former employer Channel Technologies, Inc. ("CTI") and CTI's insurer, Reliance Standard Life Insurance Company ("RSL"). Plaintiff also alleges equitable estoppel against RSL and CTI and breach of fiduciary duty against RSL.

Plaintiff Cyr asserts that she worked for CTI from February 1988 to October 2000. In 2001, Cyr filed a civil suit against her employer alleging gender discrimination for unequal pay. She argued that during the period from September 1998 through October 2000 her salary as vice president of administration was approximately $70,000 less (she was paid $85,000 when she should have been paid at least $155,000) than the annual salary of CTI's male employees performing work of equal skill, effort, and responsibility.

According to Cyr, in 2004 she and CTI entered into a wage agreement settling her lawsuit in reliance upon RSL's assurance that it would pay LTD benefits based on the increased salary Cyr should have been receiving at the time of her disability. Cyr further contends that RSL assured her that its determination to adjust her LTD benefits both retroactively and prospectively was not dependent on whether its reinsurer contributed to the increased LTD payments. In January 2005, RSL indicated that it would not adjust Cyr's benefits because its reinsurer had refused to accept the terms of the wage agreement. Cyr contends that she has exhausted her administrative remedies. She

seeks the difference between the LTD benefits received and the increased LTD benefits that should have been paid based on a higher salary, a clarification of her future rights, and attorneys' fees. On June 8, 2007, the Court dismissed RSL as a defendant to Count 1 (the benefits claim) on the ground that it is not a proper defendant under ERISA.

On September 28, 2007, pursuant to this Court's order, the parties filed cross motions for summary adjudication. Plaintiff Cyr asks for summary adjudication on Count 1 of her complaint (determination of benefits). She also moves for summary adjudication on all claims on the grounds that RSL waived its defenses by not raising them at the administrative level and because RSL's defenses have no evidentiary support. RSL, for its part, moves for summary adjudication on the basis that the ERISA disability benefits plan ("the plan") terms unambiguously do not allow Cyr the retroactive relief she requests, and opposes Cyr's motions on the grounds that Cyr has "unclean hands" because the wage adjustment was not bona fide, but was entered into solely for the purpose of making RSL pay for CTI's wrongdoing. Finally, upon a subsequent order of the Court, the parties filed cross briefs for summary adjudication on whether the Court should reconsider its previous ruling that RSL is not a proper defendant to the benefits claim.

## II. LEGAL STANDARD

Summary adjudication of an issue, like summary judgment, is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" on that issue. Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In adjudicating a motion for summary judgment or summary adjudication, the court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

## III. DISCUSSION

### A. *Evidentiary Issues*

In support of its position, RSL has submitted twenty seven evidentiary exhibits. Plaintiff Cyr moves to strike sixteen of them on the grounds that they are protected settlement negotiations, are irrelevant, or were not part of the administrative record. In view of the fact that the burden of demonstrating admissibility is on RSL, the party seeking admission, *see Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1004 (9th Cir.2002), the Court strikes most of these exhibits.

### 1. *Settlement Negotiations* [1]

Plaintiff objects to most of the challenged exhibits as inadmissible settlement negotiations under Federal Rule of Evidence 408, which provides that

(a) **Prohibited uses.**—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or

---

[1]. The Court rejects RSL's argument that Cyr has waived her right to invoke Rule 408 because her estoppel claim, under which she must show detrimental reliance, places the settlement negotiations "directly at issue."

(Opp'n Mot. Strike 10.) RSL cites no authority for the anomalous proposition that the fact that evidence may be relevant trumps a different Rule that requires the exclusion of that evidence.

amount, or to impeach through a prior inconsistent statement or contradiction: (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) **Permitted uses.**—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

RSL argues that the evidence is "admissible to prove the parties' knowledge and state of mind," which supports its affirmative defense of unclean hands/collusive settlement—a purpose not prohibited by Rule 408.[2] (Opp'n Mot. Strike 10.)

### 2. *Relevance*

Plaintiff also raises several objections on relevancy grounds. Under the Federal Rules of Evidence, relevant evidence, which "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," *see* Fed. R.Evid. 401, is generally admissible, *see* Fed.R.Evid. 402. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Defendant appears to misperceive the burden of proof, arguing that it is on Cyr "to explain or articulate why the documents are irrelevant." (Opp'n Mot. Strike 10.) On the contrary, the party seeking to introduce the evidence "must carry the burden of showing how [it] is relevant to one or more issues in the case, and must demonstrate that, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Conners*, 825 F.2d 1384, 1390 (9th Cir.1987). RSL must therefore establish the relevance of the evidence it seeks to introduce.

### 3. *Scope of Evidence to Review*

As to Count 1 only, the Plaintiff objects to many of these exhibits because they were not part of the administrative record; and, in general, courts may only consider the administrative record on a claim for ERISA benefits.[3] The Court will address this issue *infra* in its section on Count 1.

### 4. *Specific Exhibits*

The Court will now address the admissibility of each of the challenged exhibits as far as Rules 401–403 and Rule 408 are concerned.

Exhibit 2 is Cyr's Second Amended Complaint against her employer. Cyr argues that the complaint should be excluded on the grounds that it is not relevant. The Court disagrees. The complaint is rele-

---

**2.** Plaintiff is incorrect to the extent she suggests that the only permissible uses are the ones explicitly mentioned by the Rule. *See Rhoades v. Avon Prod., Inc.,* 504 F.3d 1151, 1161 n. 9 (9th Cir.2007) (noting that the permissible purposes mentioned by Rule 408

"are not an 'exhaustive' list, but [are instead] only illustrative").

**3.** This limitation does not apply to Plaintiff's breach of fiduciary duty and estoppel claims.

vant because it identifies Plaintiff's claims against CTI; the fact, for example, that she sued for wrongful termination as well as a violation of equal pay and discrimination makes it slightly more likely that her settlement with CTI did not reflect a bona fide wage adjustment and was instead reflective of the settlement of Plaintiff's other claims.

Exhibit 6 is a letter from Plaintiff's lawyer to CTI's lawyer enclosing the "Material Terms of the Settlement" document which summarized the CTI/Cyr settlement. The letter discusses the details of the settlement and whether the parties were willing to sign the final settlement agreement. The Court finds that Rule 408 prohibits the introduction of this exhibit. Defendant argues that this evidence should be admitted because it "provide[s] context to the facts regarding the parties' settlement" which shows that "the parties had a side agreement that the wage adjustment agreement was only entered into for the purposes of the RSL adjustment, and does not stand alone." (Opp'n Mot. Strike 9.) This is just another way of asserting that the settlement provides evidence that the wage agreement is inaccurate because CTI is liable for more than just wage discrimination, and therefore RSL must be liable, correspondingly, for less than the wage agreement reflects. However, information about liability, validity, and amount of claims is precisely what Rule 408 precludes. Indeed, RSL's statement that the evidence should be admitted because "a settlement for a lawsuit which [has] multiple causes of action may constitute payment for allegations other than unequal pay" reveals that RSL does seek to admit the evidence in order to show

what in fact the payments were for, and thereby to reduce the amount of its own liability. (*Id.* 11.)

The Court strikes Exhibits 7–10, which consist of correspondence between Cyr's and CTI's lawyers revising the settlement agreement. RSL argues these documents are admissible because they show "the parties' intentions regarding the wage adjustment agreement and their concerns that the Material Terms Agreement may be 'misconstrued' by Richard Walsh," the RSL agent in charge of handling Cyr's claim, and because they show "the wage adjustment was 'not intended [ ] to be interpreted as enforceable independent of the full settlement agreement.'" (*Id.* 8.) The Court finds, however, that these documents are *only* relevant insofar as they might support RSL's claim that CTI and Cyr colluded to pay Cyr for much more than her wage claim justified because they knew RSL would be the one paying-in other words, the documents are relevant only if they can support RSL's claim that the ultimate payout in the settlement was invalid, exactly what Rule 408 prohibits.

Exhibit 11, which is a letter from CTI's lawyer to Cyr's lawyer discussing what materials to forward to RSL, will be considered. Because this document is not part of the settlement negotiations, Rule 408 does not prohibit its admission. RSL argues the letter is relevant because it provides context about the settlement. (*Id.* 9.) The Court agrees that this evidence is relevant because RSL's unclean hands defense is based on its alleged lack of knowledge about the true nature of Cyr's claims, and the letter is evidence of what RSL did and did not receive from Cyr.[4]

---

**4.** Plaintiff argues this information is not relevant because Walsh acknowledged Cyr provided everything he asked for and because "RSL has failed to explain how the information it seeks to admit would have impacted its

benefit determination." (Reply Mot. Strike 7.) Demonstrating relevancy requires only a minimal showing; although the evidence may have only limited probative value in proving Cyr's bad faith or collusiveness, it is not so far

Exhibit 12, which is the CTI and Cyr lawyers' letter to Richard Walsh forwarding the Material Terms Agreement, will also be considered. As it is not part of the settlement negotiations, it is not precluded by Rule 408. Defendant has not made a specific argument for its relevancy, but the Court finds it relevant—and therefore admissible—for the same reason Exhibit 11 is relevant.

Exhibits 12 and 13 both constitute email correspondence between the CTI and Cyr lawyers concerning what information to send to RSL. Again, as these do not constitute settlement negotiations or settlement agreements Rule 408 is not at issue. The Court finds the information relevant and admissible because it relates to why the parties provided certain information to RSL and how they worded the information they offered.

The Court excludes Exhibit 21, lodged under seal, which is a letter from Cyr's lawyer, Bradford Ginder, to the CTI lawyer. This letter attaches a document entitled "Addendum to Material Terms of Settlement Agreement" and discusses changes in the settlement agreement; the document therefore constitutes protected settlement negotiations. RSL does not explain for what specific purpose it offers this exhibit; however, it can be inferred that RSL intends its justification for other exhibits—to show that the amount settled on compensated more than just the wage claim, and that therefore RSL owes less than Cyr asserts—to apply here as well. (*See* Opp'n Mot. Strike 8) ("[E]vidence regarding Cyr's underlying lawsuit is being

offered . . . to demonstrate that the wage adjustment agreement was not bona fide.") Accordingly, the evidence is being offered for an inadmissible purpose.

Exhibit 22 is a letter from CTI's lawyers to Cyr discussing counteroffers in settlement—information protected under Rule 408. RSL argues it is offered to provide context to the settlement, but the Court finds this "context" could only be information about the relative liability of CTI versus RSL,[5] and that the exhibit is therefore inadmissible. Exhibit 23, which is Ginder's response, is struck for the same reason.

Exhibits 24 and 26, lodged under seal, are the final settlement agreement, release, and waiver, and accompanying exhibits. These exhibits are protected by Rule 408, and the Court will not consider them. RSL claims it offers this evidence as "relevant to the issues of estoppel and breach of fiduciary duty," without further explanation. (*Id.* 9,) The Court could understand that relevance, but only if the agreement were used to suggest that the amount of the claimed wage adjustment did not in fact reflect Plaintiff Cyr's entitlement to back wages—a form of relevance trumped by Rule 408's protections.

Finally, the Court strikes Exhibit 25, which is additional email correspondence between Ginder and the CTI lawyers about settling the case. RSL has highlighted a portion of the letter referring to the *amount* of money Cyr would receive. Accordingly, RSL, it is clear to the Court, is offering this evidence to show the settle-

---

afield from the alleged misconduct as to be excludable on the grounds of irrelevance.

5. For example, the letter explains that a counter-settlement offer by Cyr was rejected because CTI felt she was asking for too much money, because her offer would have retained her employer as a possible defendant in the RSL benefits lawsuit. RSL hopes to use this

information to show that the ultimate settlement (wage agreement) was not accurate (bona fide) in its *amount* (in that the amount was inflated) because it incorporated the dealings necessary to remove CTI as a defendant and place the liability on RSL's shoulders. Such a claim—that the wage adjustment was inflated—is a prohibited use under Rule 408.

ment was an inflated estimate of the actual back earnings she was owed—a use forbidden by Rule 408.

### B. *Count 1: Determination of Benefits*

29 U.S.C. § 1132(a)(1)(B) provides for civil actions "to recover benefits due to [a plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." To adjudicate Plaintiff's request for summary adjudication of this claim, the Court must address 1) whether RSL is a proper party; 2) the scope of the record that the Court may review; 3) whether RSL has waived its defenses to this count; and 4) whether the language of the plan allows for the benefits Cyr seeks. The Court grants summary adjudication for Plaintiff Cyr on Count 1.

#### 1. *Proper Party*

■ While a beneficiary may sue the plan's insurer for a breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and (a)(3), § 1132(a)(1)(B) "does not permit suits against a third party insurer to recover benefits when the insurer is not *functioning* as the plan administrator." *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 754–56 (9th Cir.2001) (emphasis added). On June 8, 2007, this Court dismissed RSL as a defendant to the § 1132(a)(1)(B) claim because it concluded that "defendant is not the plan or plan administrator." (Order Granting Dismissal ("Order") 6.) At the settlement conference in this case, the Court ordered the parties to file supplemental briefs on the issue of whether the Court should confirm its prior ruling that RSL is not a proper defendant to the § 1132(a)(1)(B) claim. Upon reconsideration of the issue, the Court finds that RSL is in fact a proper defendant to this cause of action.

Cyr argues that because "RSL admits that it performed virtually all, if not all, of the services that a plan administrator performs," it functions as a plan administrator and thus, under *Everhart*, is a proper defendant. (Cyr Proper Party Mot. 9.) The Court agrees. Although the Supreme Court has not squarely addressed this issue, in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), it interpreted § 1132(a)(3) broadly, eschewing narrow limits on who may constitute a proper defendants. This suggests that when it does address a similar question with respect to § 1132(a)(1)(B), the Court may well hold similarly.

Further, the Ninth Circuit's decision in *Everhart* left room for suits against insurers so long as they are functioning as the plan administrator. *See Everhart,* 275 F.3d at 756 (holding that § 1132(a)(1)(B) does not permit suits against insurers who are not "functioning as the plan administrator" but not explaining how to decide when an insurer is so functioning). Cyr notes that RSL "provided plan documents to participants, received benefit claims, evaluated them and made benefit determinations, interpreted the terms of the plan, and made and administered benefit payments." (Cyr Proper Party Mot. 9.) RSL does not contest these assertions; indeed, this entire case revolves around the fact that RSL is claiming the right to interpret the plan, and is urging an interpretation of the plan that would preclude Cyr's claims. *See Leung v. Skidmore, Owings & Merrill, LLP.*, 213 F.Supp.2d 1097 (N.D.Cal.2002)(holding that even though the insurer was not officially the plan administrator, there was "a triable issue of fact as to whether [the insurance company] was [effectively] a plan administrator," in which case it could be sued under § 1132(a)(1)(B), and noting that this conclusion was the only "common sense" reading of *Everhart* ).

Instead, Defendant argues that *Ford v. MCI Commc'ns*, 399 F.3d 1076 (9th Cir. 2005), forecloses Cyr's argument that RSL is a proper defendant. In *Ford*, the court considered an ERISA case for benefits in which the benefits plan had designated Hartford Insurance/Hartford Life as the claims administrator but not as the plan administrator. The court rejected the plaintiff's argument that Hartford could be sued under 1132(a)(1)(B) because it *"is* the plan administrator because it had discretionary authority to determine eligibility for benefits and was functioning as the plan administrator." *Id.* at 1081–82.

*Ford* is distinguishable. First, any comments the Ninth Circuit made about the propriety of suing insurers under § 1132(a)(1)(B) were dicta because the decision is not clear about whether Hartford was the insurer, as opposed to merely the claims administrator. More importantly, in *Ford* the plan in fact designated a plan administrator-MCI. Here, the parties agreed at the November 5, 2007 hearing on these motions that as of 2000—the time of "the facts giving rise to the claim"—all of the plan documents were "silent concerning who the plan administrator [was]." (Mot. Summ. J. Tr. Nov. 5, 2007 ("Tr.") 4:6–18.) [6] This lack of clarity is confirmed by the fact that during the administrative appeal, Cyr's attorney opined to RSL that he could not "determine from the subject Long Term Disability Policy issued by RSL whether RSL is the plan administrator or whether Channel Technologies, Inc.

is the plan administrator." (Opp'n. Ambiguity Mot. Ex. A, LAC–1–00000053.)

These distinctions are important. In *Ford,* even if Hartford had a great deal of control and decision making authority, MCI was the ultimate administrator of the benefit plan. Further, there is no indication that Hartford was responsible for funding any benefits due. The buck stopped, so to speak, with MCI. It therefore made sense to limit liability to MCI because it held ultimate responsibility, and presumably bore the ultimate responsibility for paying out the benefits. Hartford, for all its responsibility, in the end was in some way subordinate to MCI.

In Cyr's case, by contrast, in the absence of a designated plan administrator, RSL has assumed superior status; it engaged in the following exchange with the Court at the hearing:

> THE COURT: [D]id anyone else have final or ultimate authority to settle the claim here, other than RSL?
>
> MR. BERNACCHI [for RSL]: No. It would have been RSL's decision ultimately, your Honor.

(Tr. 1:11–15.) Further, RSL is responsible for paying the benefits. Indeed, that RSL conceives of itself in such a fundamental role is also clear from the fact that in this litigation it claims the authority to overrule the plan itself—CTI—in denying Cyr benefits. For example, at the hearing the following exchange occurred:

> THE COURT: [I]n this case, CTI had, obviously, no objection to paying the

---

**6.** The parties also agree that years after the events giving rise to this case, a "summary plan description" was created that named CTI as the plan administrator. (Tr. 1–5.) That document does include a provision designating it as retroactive back to 1989. (Tr. 2:24.) This document does not alter the Court's conclusion. A summary plan description "is the statutorily established means of informing participants of the terms of the

plans and its benefits." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1329 (9th Cir. 1996) (internal quotation marks omitted). The document is designed to *inform* participants of their rights; as such, it would fly in the face of ERISA to give effect to a provision in the summary plan description that was *not* in fact conveyed to participants, including Ms. Cyr, because it did not yet exist.

plaintiff under the plan, the amount of money that she believed she was entitled to, correct?

MR. CREITZ [for Cyr]: Correct, your Honor.

THE COURT: And RSL did not go along with that decision, correct?

MR. BERNACCHI [for RSL]: That is correct, your Honor.

(Tr. 2:11–19.)

*Ford* may have precluded suits against entities who have been delegated "discretionary authority," but it says nothing about cases where the entity in question holds *ultimate authority* on all matters relating to plan benefits. Reading *Ford* to prohibit suits against an entity with as broad authority as RSL asserts here, simply because the plan fails to name any administrator, leads to the anomalous conclusion that even if Cyr is entitled to her benefits, she cannot sue the *only* entity who is ultimately responsible for providing them.[7] Such a ruling would allow an end run around ERISA's statutory purpose of protecting employee benefits. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

A recent opinion from the Northern District of California supports this conclusion. In *Moody v. Liberty Life Assur. Co.*, 2007 WL 1174828 (N.D.Cal. Apr.19, 2007), the court granted the plaintiff leave to amend a § 1132(a)(1)(B) claim against the third party insurer with additional allegations and evidence showing that the insurer was in fact functioning as plan administrator. The court noted that under some "factual circumstances [the insurer] could be considered 'co-plan administrators.' " *Id.* at *4. In other words, the court did not read *Ford* as precluding the acknowledgment of de facto plan administrators in every situation.

Here, RSL is claiming unparalleled authority in managing and administering this benefits plan. It would be a manifest injustice to ignore this fact and prevent Cyr from suing the one entity that in fact controls her destiny. Accordingly, the Court reconsiders its prior ruling and concludes that, as a matter of law, RSL is acting as the plan administrator and is a proper defendant to the § 1132(a)(1)(B).[8]

### 2. *Scope of Record to Review*

■ In adjudicating a claim for benefits under § 1132(a)(1)(B), courts are generally, but not always, restricted to the administrative record. Both parties ask the Court to consider extrinsic evidence. The Court grants Plaintiff's request and denies Defendant's.

■ "When a plan does not confer discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan, a court must review the denial of benefits de novo . . . ." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc). RSL concedes that the review of the denial in this case should be de novo, rather than for abuse of discretion.

"If de novo review applies, no further preliminary analytical steps are required. The court simply proceeds to

---

7. This conclusion is buttressed by Federal Rule of Civil Procedure 19's directive that a person or entity should be joined as a party if, *inter alia*, "in the person's absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1).

8. Despite this new conclusion, the Court does not reconsider its ruling denying sanctions against RSL for breaching its agreement only to move for summary judgment on the issue of whether RSL was a proper party to the § 1132(a)(1)(B) claim. Now that the Plaintiff has prevailed on this claim, she has not suffered any prejudice from the breach.

evaluate whether the plan administrator correctly or incorrectly denied benefits...." *Id.* Generally, the Court is limited to reviewing evidence from the administrative record; "extrinsic evidence c[an] be considered only under certain limited circumstances." *Opeta v. Northwest Airlines Pension Plan,* 484 F.3d 1211, 1217 (9th Cir.2007). The Ninth Circuit has emphasized that "a district court should exercise its discretion to consider evidence outside of the administrative record *'only* when circumstances *clearly establish* that additional evidence is *necessary to* conduct an adequate de novo review of the benefit decision.'" *Id.* (quoting *Quesinberry v. Life Ins. Co. Of N. Am.,* 987 F.2d 1017, 1025 (4th Cir.1993) (en banc)).

The Ninth Circuit has adopted a nonexhaustive list of circumstances that might justify admitting extrinsic evidence, including:

the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.*

In this case, the Court is faced with the troubling fact that RSL has admittedly "lost" the entire administrative record.

(Pl's. Mot. for Summ. J. on Waived Defenses ("Waived Defenses Mot.") Ex. A, 30–38.) Cyr appears to have been able to recreate some of the record by submitting her administrative appeal package.[9] (Waived Defenses Mot. Ex. C.) However, both parties seek to rely on evidence that they agree was not part of the administrative record. Under these circumstances, the Court grants Cyr's request but denies RSL's.

Cyr offers as extrinsic evidence the deposition testimony of Richard Walsh, the RSL representative who handled Cyr's claim. The testimony includes his oral interpretation of the meaning of the plan language, including whether retroactive benefits are covered, and details about losing the administrative record and what kind of investigation he (and RSL) did on Cyr's case. (*See* Waived Defenses Mot. Ex. A.) Cyr also offers a declaration by Walsh stating that RSL "found over 1500 claims where benefits were adjusted during the time frame in question, but it could not specifically identify any claims where the benefits were increased due to a retroactive wage increase." (*Id.* Ex. C.)

The Court finds that many of the *Opeta* factors for allowing extrinsic evidence are present here, and justify the admission of Plaintiff's evidence. First, there is "little to no evidentiary record" because RSL "lost" it. Second, in the absence of the administrative record, Walsh's deposition and declaration provide important evidence about RSL's interpretation of the plan. Third, RSL is the payor, the claims administrator, and, as discussed, also the functional plan administrator; the Court therefore has serious concerns about im-

9. However, she mentions one letter from RSL to GE (RSL's reinsurer) which allegedly "recommend[s] that the corrected benefit be paid." (Waived Defenses Mot. 6.) Cyr has not been able to review that letter, and argues that as a sanction for RSL's spoliation of the record the Court should infer that the contents of the letter are "fatal to RSL's defenses." (*Id.* 6–7 n. 6.) Because the Court grants summary adjudication for Cyr that she is entitled to benefits under the plan, the Court need not address this evidence.

partiality because once RSL's reinsurer denied Cyr's claim, RSL had a major financial incentive to deny it as well. Finally, Plaintiff Cyr could not have presented this evidence in the administrative hearing because she had not yet deposed Walsh. Similarly, Walsh did not submit the declaration until September 12, 2007, and in the declaration acknowledged that the evidence of other adjustments was previously undiscovered. (*Id.* Ex. C.)

RSL seeks to submit a significant amount of extrinsic evidence in an attempt to show that Plaintiff's wage increase was not bona fide and that the settlement agreement was collusive. This evidence consists of documents created during the settlement negotiations between Cyr and CTI, as well as Plaintiff's Second Amended Complaint against her employer. (*See* Def's. Ex. 2, 6–26.) In essence, RSL argues that this evidence reveals Cyr's attempts to conceal material detrimental to her claim, and the Court should thus consider the broader context in order to adjudicate the question of bad faith.

First, it is not even clear to the Court that the analysis about whether to allow extrinsic evidence applies where the plans seek to introduce the evidence; all cases cited by Defendant refer to cases where the *claimant* was able to introduce extrinsic evidence because of the *defendant's* procedural violations. (*See* Opp'n Waived Defenses Mot. 20.) After all, "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Black & Decker*, 538 U.S. at 830, 123 S.Ct. 1965 (internal quotation marks omitted).

However, even assuming the evidentiary inquiry applies equally to either party, the Court would not exercise its discretion to consider RSL's extrinsic evidence. Most of it is inadmissible under Rule 408 as settlement documents used for an impermissible purpose. As for the rest, RSL offers it to show unclean hands—that Cyr's wage adjustment is not bona fide. However, none of the proffered evidence in any way challenges the merits of Cyr's wage discrimination claim, nor does it challenge the fact that the appropriate corresponding male salary was $155,000.

Moreover, it is RSL's behavior that reeks of bad faith. It has "lost" the administrative record. It refused to adjust her benefits even though Richard Walsh agreed that Cyr provided all the information RSL requested, and even though Walsh "didn't do any additional investigation [to determine whether the wage adjustment was bona fide] other than reviewing what was contained in our claim file." (Waived Defenses Mot. Ex. A, 99.) Further, RSL's unclean hands defense makes no sense as a justification for the denial of benefits because, as will be discussed, that was not the reason RSL denied her benefits. In determining whether to admit extrinsic evidence, the Court must decide whether that evidence is necessary to review the *decision to deny benefits*. In light of the evidence of RSL's bad faith and because RSL concededly did not raise unclean hands as a reason for denying the benefits, nor did it request additional information on this issue, the Court does not find this to be one of the unusual circumstances that would justify the admission of RSL's extrinsic evidence.[10]

**10.** RSL and Richard Walsh, apparently, have found themselves in similar situations before. Just recently, in *Withrow v. Bache Halsey Stuart Shields, Inc.*, 2007 WL 1993816, at *3 (S.D.Cal. July 5, 2007), the magistrate judge declined RSL's request to present extrinsic evidence about an affirmative defense because that defense was not raised during the administrative appeal, noting that "the belated assertion of this defense is not an exceptional circumstance." *Id.*

### 3. *Waived Defenses*

■ ERISA requires that "every employee benefit plan shall ... provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Plaintiff Cyr argues that RSL did not raise the defenses it now asserts when it denied her claim, indeed, that it never in fact clearly denied her claim at all, and that it has therefore waived its right to challenge the claim on those bases.[11] The Court agrees.

The thrust of RSL's argument before this Court is that it is not liable for the benefits Cyr seeks because "(1) The wage adjustment was not allowed under the policy; (2) The wage adjustment was not bona fide; and (3) unclean hands by Plaintiff." (Opp'n Waived Defenses Mot. 13.) RSL concedes in its briefing that it did not raise the unclean hands defense during the administrative process.

The Court finds that never during the administrative process did RSL raise the defense that Cyr's wage adjustment was not bona fide. After representing to Cyr that RSL would accept the wage adjustment so long as it was bona fide, for the first time on January 12, 2005, Richard Walsh indicated that RSL had changed its mind because its own reinsurer had refused Cyr's claim. Walsh told Cyr that the reinsurer had rejected the settlement because

1) The policy clearly states that covered monthly earnings for the sake of LTD benefit calculation is the "monthly salary received from you [the employer] on the

day just before the date of Total Disability ..."; and
2) It is not RSL's (nor our reinsurers) obligation to fund a settlement on behalf of [the employer].

In addition to the above, the reinsurer questions whether we should be providing continued benefits to Ms. Cyr at all at this time or whether her claim should have been limited by the Policy's 24 month limitation for disabilities which are due to a mental or nervous disorders [sic].

(Def's.Ex.16.) The next day, on January 13, 2005, Walsh forwarded to Cyr's attorneys a copy of the letter from the reinsurer. (Def's.Ex.17.) That is the extent of RSL's "explanation" of its denial.

The Ninth Circuit has held that the ERISA regulation which requires that claimants be provided the "specific reason or reasons for the denial" with "[s]pecific reference to pertinent plan provisions on which the denial is based, ... calls for a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Medical Ben. Plan,* 110 F.3d 1461, 1463 (9th Cir.1997). This "meaningful dialogue" means that the ERISA plan may only deny benefits with "a rational explanation." *Id.*

In *Booton,* the court granted summary judgment in favor of a claimant as to the plan administrator's—Aetna's—liability. The court noted that "[i]f the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs." *Id.* at 1465. Similarly, in this case, as noted, Walsh testified that Cyr provided him with everything RSL asked for; yet, without any additional investiga-

---

11. Cyr appears to argue that RSL has waived defenses to all claims by not raising them during the administrative review process. She cites no authority for this proposition.

As RSL recognizes, this limited waiver framework applies only to the § 1132(a)(1)(B) benefits claim.

tion, the company refused to pay. (Waived Defenses Mot. Ex. A, 99.) Thus, RSL did not "comply with these simple, common-sense requirements embodied in the regulations and our caselaw." *Booton,* 110 F.3d at 1465. It cannot raise the bona fide issue now, when Cyr had no warning that RSL was dissatisfied with the information she had provided.[12] *See Withrow,* 2007 WL 1993816, at *3 (precluding RSL from raising a defense to benefits that it did not raise during the administrative appeal).[13]

Worse, Defendant RSL never in fact denied Cyr's claim. Instead, in his letter to Brad Ginder, Walsh stated that the reinsurer had rejected the settlement, that "it does not look favorable at this point in time," but that he would "let [Ginder] know as soon as possible regarding a final determination by RSL." (Def's.Ex.17.) Walsh then forwarded the reinsurer's rejection of the settlement, but never denied the claim. As late as RSL's answer to the First Amended Complaint it was asserting

that "there was no 'denial of benefits under the Plan.'" (Answer FAC ¶ 49.) As the Court understood from the parties' representations at the November 5, 2007 hearing, RSL has still never officially denied Cyr's claim. This omission was no mere oversight; during the administrative appeal, RSL attempted to reject Cyr's claim for failure to exhaust administrative remedies because "we believe there has never been an adverse benefit determination on your client's claim." (Opp'n Ambiguity Mot. Ex. D.)

In other words, RSL refused to respond to Cyr's claim, arguing she could not even appeal because there had been no denial, and now, having conveniently "lost" the administrative record, claims there *was* a denial, and urges as its primary defense of this "nondenial denial" a sudden dissatisfaction with evidence it had every earlier opportunity to contest or investigate further. RSL claims the Court should ignore this behavior because Plaintiff appealed nevertheless, and therefore was not preju-

---

**12.** RSL argues that the remedy for a procedural violation—here, failure to provide a proper denial—is to alter the standard of review from abuse of discretion to de novo, not to preclude RSL from raising new defenses. This argument does not aid Defendant in light of the Court's decision not to consider the extrinsic evidence Defendant seeks to admit; without that evidence RSL undeniably has no evidence that the wage adjustment is not bona fide. More importantly, that is not an accurate statement of the law. In fact, when "procedural violations rise to the level [where they are egregious, thereby] ... alter[ing] the substantive relationship between employer and employee," a substantive remedy in the form of the "retroactive reinstatement of benefits" may be appropriate. *McKenzie v. Gen. Tel. Co. of Cal.,* 41 F.3d 1310, 1315 & n. 4 (9th Cir.1994) (internal quotation marks omitted). In view of RSL's behavior in this case, the Court finds a substantive remedy is appropriate.

**13.** RSL cites *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir.1997) (en banc), for the

proposition that failure to raise a defense does not render it waived. That case is distinguishable. In *Vizcaino,* the plan administrator had denied benefits based on a legally erroneous rationale, and the Ninth Circuit remanded so that the administrator could consider in the first instance a new defense based on construction of the plan's language. *Id.* at 1013. In this case, RSL (who is in fact interpreting and administering the plan, whether or not this is a right it lawfully possesses), told Cyr during the administrative process that she would have to have to show that the adjustment was bona fide. Yet, it never informed her of its dissatisfaction with her response. In other words, the idea that Cyr's claim must be bona fide is not a new issue for RSL; RSL had every opportunity to ask for more information or perform further investigation. The Court refuses to reward RSL for its tactics of confusion by allowing it to use as a basis for rejecting her claim evidence with which it seemed perfectly content during the administrative process.

diced. The Court commends Cyr and her lawyers for their diligence in the face of at best negligent and at worst cruel behavior, but declines RSL's invitation to give it a pass. This Court agrees with the Eighth Circuit that it is inappropriate to "permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir.1998); *see also McKenzie,* 41 F.3d at 1315–16 (noting that a retroactive award of benefits may be appropriate where a plan administrator "intentionally conceal[ed] the terms of the Plan" or where the plan was "administered unfairly" (internal quotation marks omitted)).

Although RSL never technically denied Cyr's claim, Walsh did mention the policy language—though not all the provisions currently relied upon—as a rationale for the reinsurer's rejection of Cyr's claim. Arguably, because of this failure to deny the claim at all RSL has waived any defense to the benefits claim. The Court need not reach this issue as to the interpretation of the plan language because, as will be discussed, it finds that the policy supports Cyr as a matter of law. However, given the context of this case, the Court will not consider as a defense RSL's never-before-raised argument that Cyr's adjustment is not bona fide or marred by unclean hands.

### 4. *Ambiguity of Plan Language*

■ RSL moves for summary adjudication on the interpretation of the language in the benefits plan. Specifically, it argues that the plain language of the plan does not allow for retroactive benefit adjustments, and therefore, as a matter of law, Plaintiff Cyr is not entitled to the relief that she seeks. The Court disagrees, and finds instead that, as a matter of law, the plan *does* allow her to receive retroactive benefits.

Under the Plan, an eligible insured is entitled to *66.666%* of his "Covered Monthly Earnings" to a maximum benefit of $13,000, less other income benefits.[14] (Plan 1.0.) "Covered Monthly Earnings" are defined as

the insured's monthly salary received from [the employer] on the day just before the date of Total Disability, prior to any deductions to a § 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings.

(Plan 2.0.) The plan further explains that

Changes in the Monthly Benefit because of a change in age, class or Earnings (if applicable) are effective on the date of the change, provided the insured is actively at work *on* the date of the change. If an insured is not actively at work when the change should take effect, the change will take effect on the day after the Insured has been actively at work for one full day.

(Plan 1.1.) "Actively at Work" is defined as

actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an injury or Sickness.

(Plan 2.0.)

■ The issue for the Court to decide is whether the plan is ambiguous as to whether it covers Cyr's retroactive wage increase. Applying federal contract law, "courts should first look to explicit language of the agreement to determine, if

---

**14.** RSL incorrectly cites the percentage in its brief as 62.666%, rather than 66.666%.

possible, the clear intent of the parties." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir.2007) (internal quotation marks omitted). "[T]erms in an ERISA plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* at 1194 (internal quotation marks and alterations omitted). To find a term unambiguous courts must be able to "exclude all other alternative constructions . . . as unreasonable." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1112 (9th Cir.2000).

■ Where a Plan is ambiguous courts that are reviewing benefits denials de novo must apply the canon of *contra proferentum,* which "holds that if, applying the normal principles of contractual construction, the insurance contract is fairly susceptible to two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Blankenship v. Liberty Life Ass. Co.*, 486 F.3d 620, 625 (9th Cir.2007) (internal quotation marks omitted).

RSL contends that the plan unambiguously precludes retroactive benefits. It argues that the "Covered Monthly Earnings" provision requires funds to be "received" to trigger benefits, and that "the term 'received' cannot be reasonably interpreted to mean that the salary is not actually paid, but merely that the employer has agreed that the salary is warranted." (Ambiguity Mot. 9.) RSL claims further support in the provision describing changes in benefits. Because the changes take effect only if the insured "is actively at work," and because the provision specif-

ically provides that if the insured is not then at work the changes do not take effect until the insured returns to work, RSL argues that the plan evinces a clear intent to preclude retroactive benefits.

RSL's argument is not without force. However, ultimately its argument hinges on a particular interpretation of the term "received." According to RSL, "[t]he monthly benefit is based on the salary an employee receives, not the salary an employee is *entitled* to or the salary an employer has retroactively agreed upon." (Ambiguity Mot. 9.) RSL's interpretation has convinced the Court that more than one interpretation is possible because its juxtaposition of "actually" received as opposed to "constructively" received suggests the term may have multiple meanings. (*Id.*)

The Court finds that the plan is facially ambiguous with regard to whether it allows for retroactive benefits. The term "received" is not defined in the plan, and the Ninth Circuit has held that "the failure of [a] policy to define its terms [can be] fatal to the insurer's attempt to limit payment." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 541 (9th Cir.1990); *see also Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 942 (9th Cir.1995) (holding that two terms left undefined by the plan were ambiguous). Retroactivity is a familiar concept both in the law and in common parlance. While it would be reasonable to limit "receives" to actual receipt, the Court cannot say that it would be unreasonable to construe the term as encompassing a retroactive wage increase.[15]

---

**15.** RSL notes that in tax law "constructive receipt of income" is taxed (and considered received) "in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given." 26 C.F.R. § 1.451–2(a). This analogy does not support RSL's position. First, tax law has a separate rubric for dealing with retroactive wages—or "back pay." *See* 26 C.F.R. § 31.3402(g)–1(a)("Supplemental Wage Payments"). Therefore, it is not so

Indeed, just last year the Ninth Circuit held that the term "received," when not defined in an ERISA plan, was ambiguous. *Blankenship*, 486 F.3d at 624–25.[16] A layperson who received a retroactive wage increase could reasonably think that he began to "receive" his higher wages on the date to which the adjustment applied retroactively. *See In re Gunderson*, 423 Mass. 642, 670 N.E.2d 386, 387 (1996) (holding, in a worker's compensation case, that "average weekly wages" should include retroactive awards because the statute did "not expressly exclude a retroactive pay increase" and because "the right to receive a retroactive pay increase vests when the work is performed not when the increase is ratified"); *Coffin v. Hannaford Bros. Co.*, 396 A.2d 1007, 1008–09 (Me. 1979) (holding, where worker's compensation statute computed benefits based on wages *"received* at the time of the injury," that the term "received was ambiguous," and was "susceptible of a 'Common sense meaning' which extends beyond its literal meaning: in proper circumstances, 'Receiving' may in fact require construction as 'Entitled to receive'" (emphasis added)).

The "Changes in Monthly Benefits" provision could also be interpreted as allowing for retroactive receipt. By this logic, because Plaintiff Cyr was actively working on the date her increase was retroactively effective, the adjustment applies. The Court rejects RSL's argument that the provision is meaningless if applied retroactively; it finds instead that the provision could reasonably be intended to address prospective wages increases, and to ensure that future salary raises do not alter benefits unless and until the insured is actively at work.[17] The Court therefore rejects RSL's argument that the plan is facially unambiguous.

Because it is reasonably susceptible to two meanings, the Court must apply *contra proferentum* and find that the plan allows for retroactive wage increases. In addition, "[w]hen a plan is ambiguous ... a court typically 'will examine extrinsic evidence to determine the intent of the parties,'" and extrinsic evidence in this case supports the reasonableness of Cyr's interpretation. *Gilliam*, 488 F.3d at 1194. For example, RSL representative Richard Walsh stated in his deposition that he recalled "two circumstances where we received court orders in employment discrimination cases [showing an increase in a claimant's wages over the amount previously indicated] where we did adjust a person's wages." (Opp'n Ambiguity Mot. Ex. E, 42; *see also id.* 82 (Walsh agreeing that "in the past [he] had interpreted similar policy language to permit an augmentation of that that's [sic] in the event

---

much that "constructive receipt" in tax law *excludes* retroactive wages as that the IRS has chosen a different method of dealing with such income. Second, and more importantly, even if RSL is correct that the regulation supports its position, all that shows is that RSL has identified one possible interpretation.

16. While the ambiguity in that case was between possession and control, rather than between active and constructive receipt, the parties there agreed, for the purposes of that litigation, that "receives" meant "to take into possession." *Id.* Therefore, there is no indication that the term could not have an even broader, constructive meaning. In fact, "control" is a very different concept from "possession." If "receives" could reasonably mean "control," surely it could also reasonably mean "entitled to receive."

17. For this reason, the Court is not convinced by the reasoning in *Olsen v. John Hancock Mut. Life Ins. Co.*, 667 P.2d 584, 585 (Utah 1983), a Supreme Court of Utah case interpreting a similar "actively at work" provision, which RSL has relied upon to argue that the instant policy unambiguously precludes retroactive benefits. Further, the Court notes that *Olsen* did not involve ERISA.

of a successful discrimination suit effecting wages").) Walsh also testified that he believed that "the plan language in the instant case creates no impediment to the adjustment of Laura Cyr's benefit in the event of a bona fide settlement." (*Id.* 45; *see also id.* 82 (Walsh "personally" disagreeing with the contention that granting Cyr the retroactive adjustment would be "interpreting the claim in a way that's contrary to [the Plan's] terms").) [18]

Accordingly, because the Plan language is ambiguous, and in light of the extrinsic evidence provided by Walsh's deposition, the Court interprets the plan in favor of Cyr, and finds that her claim for increased benefits based upon a retroactive wage increase is permissible. Because RSL's has waived its objection to the bona fide nature of the wage adjustment by not raising it during the administrative process, the Court further finds that RSL incorrectly denied Cyr the benefit adjustment, and grants summary adjudication in favor of Cyr on Count 1 in its entirety.

### C. Counts *2 and 3*

Cyr appears to have a strong claim for equitable estoppel. However, in light of the Court's ruling in favor of Cyr on the benefits issue, it need not reach her other claims.

## IV. CONCLUSION

Based on the foregoing analysis, the Court grants summary judgment for Plaintiff Cyr. She is entitled to the increased retroactive and future benefits to be calculated based on a salary of $155,000, in accordance with the wage adjustment agreement.[19]

IT IS SO ORDERED.

---

18. It is true that Walsh also stated in his deposition that he thought the "policy language on its face" did not allow for Cyr's claims because "the money was not received." (*Id.* 128.) In the context of the other comments Walsh made at his deposition, the Court concludes that this comment suggests that Walsh believes that while a narrow interpretation of the plan would exclude Cyr's claim, his general understanding of the plan and his application of it in other similar cases allowed for such claims.

19. This order does not address any issues regarding attorneys' fees that may subsequently be requested.