195 F.3d 457 (9th Cir. 1999)
 UNITED STATES OF AMERICA, ex rel. JANET C. OLIVER, Plaintiff-Appellant,
v.
THE PARSONS COMPANY; PARSONS ENGINEERING SCIENCE, INC.; PARSONS ENVIRONMENTAL SERVICES, INC.; RALPH M. PARSONS COMPANY, Defendants-Appellees.
 No. 97-56452
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 10, 1999--Pasadena, California
Filed July 19, 1999
Amended October 22, 1999
 
 [Copyrighted Material Omitted]
 Dean Francis Pace, Pace and Rose, Los Angeles, California, for the plaintiff-appellant.
 Dale H. Oliver, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, California, for the defendants-appellees.
 Robert M. Loeb, United States Department of Justice, Washington, D.C., for United States of America, amicus curiae.
 Appeal from the United States District Court for the Central District of California; William Matthew Byrne, Jr., District Judge, Presiding. D.C. No. CV-95-05423-WMB
 Before: Dorothy W. Nelson, Stephen Reinhardt, and Stephen S. Trott, Circuit Judges.
 ORDER AND AMENDED OPINION
 TROTT, Circuit Judge:
 
 ORDER
 
 1
 The opinion filed July 19, 1999, is hereby amended as follows:
 
 
 2
 At slip opinion 8102, at the end of the sentence that begins, "Their meaning is ultimately the subject of judicial interpretation," add the following as footnote 2:
 
 
 3
 We note that the agency to which the allegedly false claim was submitted has not taken any position regarding any of the issues in this case, and thus no question of Chevron deference is presented.
 
 
 4
 At slip opinion page 8103, add the following section at the end of section III. A. 3. as subsection 4:
 
 4.
 
 5
 In a petition for rehearing, Parsons argues that our decision breaks from previous authority in this circuit on the issue of whether a reasonable interpretation precludes falsity, citing United States ex rel. Lindenthal v. General Dynamics Corp., 61 F.3d 1402 (9th Cir. 1995) and United States ex rel. Hochman v. Nackman, 145 F.3d 1069 (9th Cir. 1998). These cases are inapposite. Lindenthal did not involve the interpretation of a federal regulation but instead involved the interpretation of a contract between General Dynamics and the federal government. Id. at 1411. Because a term of the contract was held to be ambiguous, the court held that the parties' intent was relevant extrinsic evidence, and the court then used that evidence to inform the court's interpretation of the contract. "We agree that extrinsic evidence was properly admitted to flesh out the meaning [the contract]. `Where contractual language is unclear and suggests several speculative interpretations, the scope of the language must be read in accordance with the parties' contemporaneous construction, and extrinsic evidence is admissible to show what the parties intended it to mean.' " Id. at 1411, (quoting Lockheed Aircraft Corp. v. United States, 553 F.2d 69, 89 (Ct. Cl. 1977)). This holding is applicable only in the realm of contract law, where a contract represents a "meeting of the minds" between the parties and where the parties' interpretation and performance of the contract may be relevant evidence of the contract itself.
 
 
 6
 Hochman is similarly unhelpful. 145 F.3d 1069. Parsons argues that Hochman stands for the proposition that a reasonable interpretation of an "imprecise" directive precludes falsity. Hochman involved allegations that a Veterans Administration clinic submitted false claims regarding the number of hours worked by physicians at the Clinic pursuant to an agreement between the clinic and the University of Southern California School of Medicine. Contrary to Parsons' suggestion, the court did not hold that the Clinic's submission was not "false." To the contrary, the court explicitly declined to decide the question of falsity, and instead disposed of the case on the scienter element, holding that "[e]ven if the defendants erred in their interpretation of the Affiliation Agreement, the undisputed evidence demonstrates that the defendantsbelieved that the Affiliation Agreement authorized their conduct." Id. at 1075.
 
 
 7
 Parsons also argues in its petition for rehearing that our holding splits from the Fifth and Seventh Circuits, asserting that those courts have adopted a "reasonable interpretation" approach to falsity. However, the cases cited do not support a conclusion that other courts have taken this view of "falsity." United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1018 (7th Cir. 1999) did not reach the issue and instead combined the issues of falsity and scienter, "our consideration of the falsity question will be incorporated into our knowledge discussion." United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 546 (5th Cir. 1977) also did not address the question of reasonable interpretation and instead looked to legislative history in order to determine the appropriate statutory interpretation. Finally, in Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1047 (N.D. Ill. 1998), aff'd, 183 F.3d 730, 1999 WL 482670 (7th Cir. July 12, 1999), the court held that the exercise of legitimate scientific judgment did not allow a finding of falsity. "Courts have consistently declined to find that a contractor's exercise of scientific or professional judgment as to an applicable standard of care falls within the scope of the FCA." Id.
 
 
 8
 In short, Parsons' petition arguing that the sky will fall upon government contractors if they are precluded from relying on a "reasonable interpretation" is not only unsupported by case law, it is also ungrounded in reality. It ignores the fact that the FCA requires more than just a false statement -it requires that the defendant knew the claim was false. 31 U.S.C. S 3729(a)(1). A contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or "reasonable" but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met.
 
 
 9
 With these amendments, the panel has voted to deny the petition for rehearing and Judges Reinhardt and Trott have voted to deny the suggestion for rehearing en banc. Judge D.W. Nelson so recommends. The petition for rehearing and the petition for rehearing en banc are hereby DENIED.
 
 Opinion by Judge Trott
 TROTT, Circuit Judge:
 
 10
 Janet C. Oliver, plaintiff qui tam, appeals the district court's denial of her motion for summary judgment and its grant of summary judgment in favor of defendants The Parsons Company, Parsons Engineering Science, Inc., Parsons Environmental Services, Inc., and Ralph M. Parsons Company (collectively, "Parsons"). The district court held that Parsons' cost accounting practices did not give rise to a claim under the False Claims Act, 31 U.S.C. S 3729 (West 1999) ("the Act") because Parsons employed a "reasonable interpretation" of the applicable regulations and because the facts alleged failed to meet the scienter requirement.
 
 
 11
 This court has jurisdiction under 28 U.S.C. S 1291. We hold that the district court erred in applying a "reasonable interpretation" approach to determining falsity under the Act and that genuine issues of material fact exist regarding whether Parsons "knowingly" submitted a false claim. We therefore REVERSE and REMAND for further proceedings in accordance with this opinion.
 
 
 12
 * FACTS
 
 
 13
 Oliver was an accountant for The Parsons Company ("TPC"). She now sues on behalf of the United States, claiming that Parsons knowingly violated the federal Cost Accounting Standards in an effort to overcharge the government, thereby giving rise to a claim under the Act.
 
 
 14
 Parsons Engineering Science, Inc. ("Parsons ES") is the predecessor of Engineering Science, Inc. ("ES") and is a subsidiary of TPC. Parsons ES is a significant federal government contractor, with contracts amounting to over $300 million between 1989 and 1996.
 
 
 15
 In August 1989, Parsons ES was awarded a $58,115,836 contract by the State of California Bureau of Automotive Repairs to operate part of the state's air quality emissions program ("the BAR contract"). In January 1990, Parsons ES awarded a subcontract to Inspection and Maintenance Corporation ("I&M"), another wholly-owned subsidiary of TPC, to perform the "field and supervisory work" associated with the BAR contract. I&M's only corporate objective is the BAR contract; it performs no work for the federal government and has continued to perform under the BAR contract even after the written subcontract with Parsons ES expired on December 31, 1991.
 
 
 16
 I&M consists solely of employees who directly implement the BAR contract. It is, as the district court put it, "in essence, only a payroll." For accounting purposes, I&M labor costs were not included in Parsons ES's direct labor base cost but were instead characterized as "other direct costs " arising from the subcontract. This practice affects the overhead rate charged to the federal government by Parsons ES in its federal contracts because the overhead rate is calculated as a percentage of the difference between the direct labor base and the "overhead pool costs." For example, if Parsons ES's direct labor base cost is $100 and the overhead pool money amounted to $150, the overhead rate is 150%. If its direct labor base cost was increased to $150, then the overhead rate charged to the government is 100%. In this way, Oliver alleges that Parsons ES used I&M to reduce its direct labor costs, thereby increasing the overhead rate billed to the federal government.
 
 
 17
 Oliver filed this qui tam action under seal on August 14, 1995, notified the government, and disclosed to the government all her evidence of fraud. On November 7, 1996, the government issued a letter declining to intervene in the litigation. The complaint was then unsealed, and Oliver began pursuing the action as relator. The parties filed a joint statement of stipulated facts on June 2, 1997. Both parties moved for summary judgment. On July 31, 1997, the district court entered summary judgment for Parsons, and Oliver now appeals.
 
 II
 STANDARD OF REVIEW
 
 18
 A grant of summary judgment is reviewed de novo. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir. 1996).
 
 III
 FALSE CLAIMS ACT
 
 19
 The Act prohibits any person from knowingly presenting a false or fraudulent claim for payment or approval by the federal government. 31 U.S.C. S 3729 (a)(1) (West 1999). A prima facie Cost Accounting Standards under the Act therefore requires proof that: (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent. Id.; see also Blusal Meats, Inc. v. United States, 638 F. Supp. 824, 827 (S.D.N.Y. 1986). The parties agree that Parsons made a claim against the United States. We therefore limit our review to the issues of falsity and knowledge.
 
 
 20
 * False or Fraudulent Nature of the Claim
 
 
 21
 Oliver argues that the district court erred in determining that the claims were not false. Specifically, Oliver argues that: (1) the district court failed to consider certain evidence; (2) the subcontract between Parsons ES and I&M was unlawful; and (3) Parsons' accounting practices did not comply with the federal requirements.
 
 1.
 
 22
 Oliver's first argument is that the district court erred in ignoring the opinion of her expert, Peter Elliot, CPA. However, in making this argument, Oliver does nothing more than reiterate Elliot's testimony, which offers an opinion regarding the legality of Parsons' accounting practices. Because Parsons' accounting practices are undisputed and the only question is whether the practices are legal, the district court was not required to accept Elliot's opinion. See Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998) ("When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate.")
 
 2.
 
 23
 Oliver next argues that the claims are false because the contractual relationship between Parsons ES and I&M was not valid. Under California law, the essential elements for a contract are (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;" and (4) "[s]ufficient cause or consideration." Cal. Civ. Code S 1550 (West 1999); Marshall & Co. v. Weisel, 51 Cal. Rptr. 183, 187 (Ct. App. 1966).
 
 
 24
 Oliver provides three alternative theories challenging the subcontract. The first theory is that a valid subcontract never existed. However, Oliver makes no actual argument on appeal challenging the existence of the subcontract per se.[1] In fact, Oliver stipulated to the existence of the written subcontract document. That document meets all the elements required in S 1550.
 
 
 25
 The second and third theories are that the subcontract became invalid upon the expiration of the written contract on December 31, 1991, or, alternatively, that the contract became invalid when ES reincorporated as Parsons ES on October 1, 1994--after the written contract had expired. Under California contract law, a contract may be implied from the conduct of the parties. Cal. Civ. Code S 1621 (West 1999); British Motor Car Distrib., Ltd. v. New Motor Vehicle Bd. , 239 Cal. Rptr. 280, 285-86 (Ct. App. 1987). It is undisputed from the record that Parsons ES and I&M continued to perform under the terms of the agreement. Therefore, the district court correctly held that a valid subcontract existed because the parties' continued performance under the terms of the written contract was sufficient to prove the continued existence of the contract. Oliver's attempts to prove falsity by challenging the subcontract between Parsons ES and I &M are unavailing.
 
 3.
 
 26
 Oliver's final argument alleging falsity involves the issue of whether Parsons ES's accounting practices complied with the federal Cost Accounting Standards. The district court held in its Order of July 31, 1997, that the "falsity" element under the Act was not met because Parsons demonstrated that it made a reasonable interpretation of an ambiguous accounting standard, citing Hagood v. Sonoma County Water Agency, 81 F.3d 1465 (9th Cir. 1996).It concluded that the issue was "not what motive defendants had for employing [their] accounting system . . . but rather whether that accounting system reasonably complied with applicable rules and regulations."
 
 
 27
 The district court erred. Hagood does not stand for the proposition that a "reasonable interpretation" of a regulation precludes falsity. Hagood involved the question of whether the defendant's submission of allocation costs under the Water Supply Act gave rise to a false claim under the False Claims Act. Id. at 1476-77. In Hagood , the statute itself granted discretion in deciding the cost allocation that the plaintiff claimed was false. See id. at 1477 ("all authorized purposes served by the project shall share equitably in the benefits of multiple purpose construction, as determined by the Secretary of the Army or the Secretary of the Interior" (emphasis added)). Unlike Hagood, this case involves regulations that, while unquestionably technical and complex, are not discretionary. Their meaning is ultimately the subject of judicial interpretation, and it is Parsons' compliance with these regulations, as interpreted by this court, that determines whether its accounting practices resulted in the submission of a "false claim" under the Act.[2] See United States v. Mead, 426 F.2d 118, 122 (9th Cir. 1970), (concluding, after engaging in judicial construction, that the defendant's interpretation of the relevant regulations was erroneous); see also United States ex. rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1524 (9th Cir. 1995), rev'd on other grounds, 520 U.S. 939 (1997) ("[U]nallowable costs can trigger the False Claims Act").[3]
 
 
 28
 Thus, while the reasonableness of Parsons' interpretation of the applicable accounting standards may be relevant to whether it knowingly submitted a false claim, the question of "falsity" itself is determined by whether Parsons' representations were accurate in light of applicable law. Because the district court erroneously relied on this reasonableness analysis, we do not reach the issue of whether Parsons' accounting measures complied with the Cost Accounting Standards and instead remand for further proceedings on this issue.
 
 4.
 
 29
 In a petition for rehearing, Parsons argues that our decision breaks from previous authority in this circuit on the issue of whether a reasonable interpretation precludes falsity, citing United States ex rel. Lindenthal v. General Dynamics Corp., 61 F.3d 1402 (9th Cir. 1995) and United States ex rel. Hochman v. Nackman, 145 F.3d 1069 (9th Cir. 1998). These cases are inapposite. Lindenthal did not involve the interpretation of a federal regulation but instead involved the interpretation of a contract between General Dynamics and the federal government. Id. at 1411. Because a term of the contract was held to be ambiguous, the court held that the parties' intent was relevant extrinsic evidence, and the court then used that evidence to inform the court's interpretation of the contract. "We agree that extrinsic evidence was properly admitted to flesh out the meaning [the contract]. `Where contractual language is unclear and suggests several speculative interpretations, the scope of the language must be read in accordance with the parties' contemporaneous construction, and extrinsic evidence is admissibleto show what the parties intended it to mean.' " Id. at 1411, (quoting Lockheed Aircraft Corp. v. United States, 553 F.2d 69, 89 (Ct. Cl. 1977)). This holding is applicable only in the realm of contract law, where a contract represents a "meeting of the minds" between the parties and where the parties' interpretation and performance of the contract may be relevant evidence of the contract itself.
 
 
 30
 Hochman is similarly unhelpful. 145 F.3d 1069. Parsons argues that Hochman stands for the proposition that a reasonable interpretation of an "imprecise" directive precludes falsity. Hochman involved allegations that a Veterans Administration clinic submitted false claims regarding the number of hours worked by physicians at the Clinic pursuant to an agreement between the clinic and the University of Southern California School of Medicine. Contrary to Parsons' suggestion, the court did not hold that the Clinic's submission was not "false." To the contrary, the court explicitly declined to decide the question of falsity, and instead disposed of the case on the scienter element, holding that "[e]ven if the defendants erred in their interpretation of the Affiliation Agreement, the undisputed evidence demonstrates that the defendants believed that the Affiliation Agreement authorized their conduct." Id. at 1075.
 
 
 31
 Parsons also argues in its petition for rehearing that our holding splits from the Fifth and Seventh Circuits, asserting that those courts have adopted a "reasonable interpretation" approach to falsity. However, the cases cited do not support a conclusion that other courts have taken this view of "falsity." United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1018 (7th Cir. 1999) did not reach the issue and instead combined the issues of falsity and scienter, "our consideration of the falsity question will be incorporated into our knowledge discussion." United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 546 (5th Cir. 1977) also did not address the question of reasonable interpretation and instead looked to legislative history in order to determine the appropriate statutory interpretation. Finally, in Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034, 1047 (N.D. Ill. 1998), aff'd, 183 F.3d 730, 1999 WL 482670 (7th Cir. July 12, 1999), the court held that the exercise of legitimate scientific judgment did not allow a finding of falsity. "Courts have consistently declined to find that a contractor's exercise of scientific or professional judgment as to an applicable standard of care falls within the scope of the FCA." Id.
 
 
 32
 In short, Parsons' petition arguing that the sky will fall upon government contractors if they are precluded from relying on a "reasonable interpretation" is not only unsupported by case law, it is also ungrounded in reality. It ignores the fact that the FCA requires more than just a false statement -it requires that the defendant knew the claim was false. 31 U.S.C. S 3729(a)(1). A contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or "reasonable" but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met.
 
 B
 Knowing Submission of a False Claim
 
 33
 The third element of a cause of action under the Act requires that the defendant knew the claim was false or fraudulent. 31 U.S.C. S 3729 (a)(1) (West 1999). Knowledge is established by proving that the defendant (1) had actual knowledge that it submitted a false or fraudulent claim for payment or approval, (2) acted in deliberate ignorance of the truth or falsity of its claim, or (3) acted in reckless disregard of the truth or falsity of its false claim. 31 U.S.C. S 3729(b) (West 1999); Wang v. FMC Corp., 975 F.2d 1412, 1420 (9th Cir. 1992). "[I]nnocent mistakes"and "negligence" are not offenses under the Act. Id.
 
 
 34
 We conclude that there are issues of fact that survive the standard of summary judgment. Specifically, Parsons' failure to disclose the existence of I&M in its disclosure statement, coupled with the Oliver affidavit, are enough, viewed in the light most favorable to Oliver, to preclude summary judgment. Evidence in the record demonstrates that Parsons ES failed to list I&M among the companies with whom it engaged in inter-organizational transfers. The language of the relevant disclosure statement, section 2.8.0 states:
 
 
 35
 Inter-organizational Transfers.
 
 
 36
 This item is directed only to those materials, sup plies, and services which are, or will be transferred to you from divisions, subsidiaries, or affiliates under common control with you.
 
 
 37
 ([I]ndicate the basis used by you as transferee to charge the cost or materials, supplies, and services to Government contracts of similar cost objectives.)
 
 
 38
 In response, Parsons ES submitted a list of companies it stated "included" but was not "limited to" the companies with which it had inter-organizational transfers. Parsons ES did not list I&M among these companies, despite the fact that it was required to provide a "complete and accurate" disclosure under the regulations. See 48 C.F.R. S 9903.202-10 (1999).
 
 
 39
 Furthermore, Oliver's affidavit states that, while in her position as a government accounting specialist for Parsons ES, she immediately contacted the appropriate officers upon discovering the existence of I&M. They told her to "forget about it." The affidavit continues:
 
 
 40
 I replied that Parsons better hope the DCAA doesn't discover I&M. The reason why I said that was because I knew that the Defense Contract Audit Agency was upset what the DCAA Auditors discovered during a floorcheck in 1992 that Parsons ES was providing services (Accounting, Human Resources, etc.) to intercompanies . . . . Because of that discovery, DCAA asked Parsons ES to produce a list of all Parsons interorganizational companies for which Parsons ES performed services. Parsons ES provided this list . . . . However, I&M was excluded from this list even though I&M has been transferring labor and other fringe benefits intercom pany to ES and Parsons ES since 1989.
 
 
 41
 Oliver's affidavit further states that she was informed that the I&M company was set up so that Parsons ES would not have to include its direct labor in the labor base for computation of the overhead rate billed to the federal government. This evidence is enough to create a genuine issue of material fact precluding summary judgment on the issue of scienter.
 
 IV
 ATTORNEYS' FEES
 
 42
 Because Oliver has yet to ultimately prevail in her qui tam action, we do not reach the issue of granting attorneys' fees, expenses and costs under 31 U.S.C. S 3730(d)(1) (West 1999).
 
 
 43
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Federal Rule of Appellate Procedure 28 requires the Appellant to do more than simply make assertions. She must provide an argument that contains "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A).
 
 
 [2]
 We note that the agency to which the allegedly false claim was submitted has not taken any position regarding any of the issues in this case, and thus no question of Chevron deference is presented.
 
 
 [3]
 The amicus brief submitted by the Government correctly points out the potential problem created by embracing a "reasonable interpretation" exception to the "falsity" of a claim. A defendant could submit a claim, knowing it is false or at least with reckless disregard as to falsity, thus meeting the intent element, but nevertheless avoid liability by successfully arguing that its claim reflected a "reasonable interpretation" of the requirements.