This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 127
The People of the State of New
York, &c., et al.,
          Respondents,
        v.
Sprint Nextel Corp., et al.,
          Appellants.


          Kannon K. Shanmugam, for appellants.
          Steven C. Wu, for respondents.
          Institute for Professionals in Taxation; Council on
State Taxation; Broadband Tax Institute; Taxpayers Against Fraud
Education Fund; Chamber of Commerce of the United States of
America; and The Business Council of New York State, Inc., amici
curiae.


LIPPMAN, Chief Judge:

          We hold that: (1) the New York Tax Law imposes sales

tax on interstate voice service sold by a mobile provider along

with other services for a fixed monthly charge; (2) the statute

is unambiguous; (3) the statute is not preempted by federal law;

- 1 -

(4) the Attorney General's (AG) complaint sufficiently pleads a cause of action under the New York False Claims Act (FCA)(State Finance Law § 187 et seq.); and (5) the damages recoverable under the FCA are not barred by the Ex Post Facto Clause of the United States Constitution.

In 1989, the United States Supreme Court held that the dormant Commerce Clause of the Federal Constitution limited the states' authority to tax interstate telephone calls.   A telephone call was taxable only if it originated or terminated within the state and was charged to an in-state billing or service address (see Goldberg v Sweet, 488 US 252, 256 n 6, 263 [1989]).

The Goldberg rule was easy to apply to landline telephones, which had fixed physical locations.  But the next decade saw "an explosion of growth in the wireless telecommunications industry" (HR Rep 106-719, 106th Congress, 2d Sess at 7, reprinted in 2000 US Code Cong & Admin News at 509), [2000]), and states and service providers struggled to adapt the Goldberg nexus requirement to mobile telephone calls.  States developed different methods to determine which mobile calls to tax.  As a result, some mobile telephone calls were subject to taxation by multiple jurisdictions (id., at 7-8).

A further complication was introduced as mobile carriers began to sell flat-rate voice plans that charged a fixed monthly price for access to a nationwide network, as opposed to

charging calls by the minute, regardless of where the calls were placed or received.  These flat-rate plans made it "virtually impossible to determine the portion of th[e] price charged for individual calls, each of which may be subject to tax by a different jurisdiction," and thus "impossible to determine the amount of revenues to which each of the various state and local transaction taxes should be applied" (S Rep 106-326, 106th Congress, 2d Sess at 2).

Congress responded by enacting the Mobile Telecommunications Sourcing Act (MTSA)(4 USC § 116 et seq.)  The MTSA establishes a uniform "sourcing" rule for state taxation of mobile telecommunications services: the only state that may impose a tax is the state of the customer's "place of primary use" -- either a residential or primary business address, as selected by the customer (4 USC §§ 117 [b], 124 [8]).

The New York Legislature responded to the MTSA in 2002 by enacting multiple amendments to the Tax Law that clarified and amended the State's treatment of mobile telecommunications services.  Under the preexisting law that was enacted in 1965, New York did not tax any interstate or international calls.  As relevant here, the 2002 amendments implemented a new set of rules -- specifically, those applicable to voice services sold through flat-rate plans.

Another legislative amendment, this one from 2010, led directly to the issues posed by this litigation.  The FCA

provides for enforcement by both the AG (in civil enforcement actions) and private plaintiffs on behalf of the government (in "qui tam civil actions"), and the AG has the right to intervene and file a superceding complaint in a qui tam action (State Finance Law § 190 [1], [2], [5]).  The Act provides for the imposition of treble damages and civil penalties against violators (id. at § 189 [1]).

The FCA applies to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to" the government (id. at 189 [1] [g]).  The statute provides that a defendant acts "knowingly" when defendant has "actual knowledge" of a record's or statement's truth or falsity or "acts in deliberate ignorance" or "reckless disregard" of its truth or falsity (id. at § 188 [3] [a]).

As originally enacted, the New York FCA did not apply to false tax claims.  But, in 2010, the legislature amended it to cover "claims, records, or statements made under the tax law" in certain circumstances (L 2010, ch 379, § 3, codified at State Finance Law § 189 [4]).  The amendment was designed to "provide an additional enforcement tool against those who file false claims under the Tax Law," and thus "deter the submission of false tax claims" while also "provid[ing] additional recoveries to the State and to local governments" (Letter from St Dept of Tax & Fin, Aug 4, 2010 at 2, Bill Jacket, L 2010, ch 379).

Sprint is a wireless telecommunications service provider that does business in New York, and it sells wireless "flat-rate" plans that include a certain number of minutes of talk time for a fixed monthly charge. After the New York Tax Law amendments were enacted in 2002, Sprint paid sales tax on all of its receipts from its flat-rate plans.

In 2005, however, Sprint began a nationwide program of "unbundling" charges within these flat-rate monthly plans. Specifically, Sprint unbundled the portion of the fixed monthly charge that it attributed to intrastate mobile voice services, and did not collect taxes on the portion that it attributed to interstate and international calls. For the tax years at issue, the percentage of the fixed monthly charge on which Sprint collected sales tax ranged from 71.5% to 83.6%. Sprint did not separately state on customers' bills the charges for interstate and international voice services included in the flat-rate plan.

On March 31, 2011, Empire State Ventures, LLC, filed suit against Sprint under the New York FCA. On April 19, 2012, the AG filed a superceding complaint, which converted the relator's action into a civil enforcement action by the AG.

The AG's complaint, as relevant here, alleges that section 1105 (b) (2) of the New York Tax Law "requires the payment of sales taxes on the *full amount* of fixed periodic charges for wireless voice services sold by companies like Sprint to New York customers." It further alleges that section 1111 (l)

permits wireless providers to "treat separately for sales tax purposes certain components of a bundled charge for mobile telecommunications services, so long as the charges are *not* for voice services." The complaint asserts that Sprint violated the Tax Law by failing to collect sales tax on the portion of its flat-rate charge that was attributable to interstate and international voice services. It further alleges that Sprint's decision to unbundle its plans sold for a fixed monthly charge "was driven by its desire to gain an advantage over its competitors by reducing the amount of sales taxes it collected from its customers and, thereby, appearing to be a low-cost carrier." According to the AG, the percentages of the flat-rate charges that Sprint allocated to interstate and international calls were completely arbitrary.

In support of its allegations that Sprint knowingly submitted false tax statements, the AG cites a Tax Department guidance memorandum published before the 2002 amendments became effective, which states that the sales tax is to be applied in the manner that the AG now advocates. The AG points out that Sprint adhered to this guidance until July 2005, when it changed its tax practices. Interestingly, Sprint did not seek a tax refund for the 2002 - 2005 tax years in which it paid those taxes.

The AG further alleges that Sprint also disregarded the statements of a Tax Department field auditor and enforcement

official advising Sprint in 2009 and 2011, respectively, that its sales tax practice was illegal, and that it disregarded the fact that the other major wireless carriers, unlike Sprint, did not break their fixed monthly charges for voice services into intrastate and interstate subparts for sales tax purposes, but instead collected and paid sales tax on the full fixed periodic charge for voice services.

As relevant to this appeal, the complaint's causes of action are all based on the same underlying contention that Sprint knowingly violated the Tax Law, engaged in fraudulent or illegal acts pursuant to Executive Law § 63 (12), and submitted false documents to the State pursuant to the FCA. The AG requests civil penalties and treble damages for each of the false tax documents submitted to the State.

Sprint moved to dismiss the complaint for failure to state a cause of action under CPLR 3211. As relevant here, Supreme Court denied the motion, holding that the Tax Law unambiguously imposes a tax on receipts from every sale of mobile telecommunications services that are voice services sold for a fixed periodic charge (see People v Sprint Nextel Corp., 41 Misc 3d 511 [Sup Ct, NY County 2013]). Moreover, even if the Tax Law permitted Sprint to exclude from taxable receipts a portion of its fixed monthly mobile voice charge to account for interstate and international calls, the Tax Law also required Sprint to use an objective, reasonable, and verifiable standard for identifying

the nontaxable components of the charge -- but the complaint alleges that Sprint failed to comply with this requirement by using "arbitrary" figures that were "not related to any customer's actual usage" (id. at 515).  The court also concluded that the complaint "alleges in great detail" how Sprint knowingly submitted false tax statements to the Tax Department, in violation of the FCA.  Supreme Court further held that New York's Tax Law does not conflict with the federal MTSA, and rejected Sprint's assertion that the Ex Post Facto Clause of the United States Constitution bars retroactive application of the FCA penalties and damages.

The Appellate Division unanimously affirmed the denial of Sprint's motion to dismiss (114 AD3d 622 [1st Dept 2014]). The Court held that the AG's complaint adequately alleges that Sprint violated the FCA, Executive Law § 63 (12), and the Tax Law "by knowingly making false statements material to an obligation to pay sales tax pursuant to Tax Law § 1105 (b)(2)" (id. at 622). In addition, the Court rejected Sprint's claim that the Tax Law is preempted by the MTSA, and its claim that retroactive application of the FCA would be unconstitutional.  The Appellate Division then certified the following question to this Court: "Was the order of the Supreme Court, as affirmed by . . . this Court, properly made?"

In Matter of Helio, LLC (2015 WL 4192425, 2015 NY Tax LEXIS ___, NY St Tax Appeals Trib DTA No. 825010, July 2, 2015),

the New York Tax Appeals Tribunal held that the language of Tax Law § 1105 (b) is unambiguous, and imposes sales tax on interstate voice service sold by a mobile provider along with other services for a fixed monthly charge.  We agree.

Section 1105 (b) of the Tax Law provides that tax should be paid on:

> "(1) [t]he receipts from every sale, other than sales for resale, of the following . . . (B) telephony and telegraphy and telephone and telegraph service of whatever nature except interstate and international telephony and telegraphy and telephone and telegraph service and except any telecommunications service the receipts from the sale of which are subject to tax under paragraph two of this subdivision . . . .
>
> "(2) The receipts from every sale of mobile telecommunications service provided by a home service provider, other than sales for resale, that are voice services, or any other services that are taxable under subparagraph (B) of paragraph one of this subdivision, sold for a fixed periodic charge (not separately stated), whether or not sold with other services"

(Tax Law § 1105 [b]).

The subject of the present dispute is the meaning of the phrase "or any other services that are taxable under subparagraph (B) of paragraph one of this subdivision" (Tax Law § 1105 [b] [2]).  Sprint contends that this language excepts from sales tax its bundled charges from interstate and international calls.  The AG, on the other hand, asserts that all mobile calls are subject to tax under paragraph (b) (2), unless they are separately stated on the customer's bill.

First, subparagraph (b) (1) does not affect the taxability of all mobile voice services under subparagraph (b) (2) because (b) (2) is a specific provision under section 1105 which applies only to the sale of mobile telecommunications, whereas (b) (1) applies to telephony and telegraphy generally. "[W]henever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable" (McKinney's Cons Laws of NY, Book 1, Statutes § 238).

Here, the plain language of the statute subjects to tax all "voice services" that are "sold for a fixed periodic charge" (Tax Law § 1105 [b] [2]).  Sprint does not contest that the services at issue are such services.  No part of subparagraph (b) (2) differentiates between intrastate or interstate and international voice service.  The statute also taxes "any other services . . . taxable under subparagraph (B)" (id.).  Sprint's interpretation of the statute would make superfluous the words "voice services, or any other" in subparagraph (b) (2) (see Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001] ["meaning and effect should be given to every word of a statute"]).  The phrase "any other services that are taxable under subparagraph (B)" must refer to services other than "voice services."  Accordingly, it is unambiguous that Tax Law § 1105 (b) (2) imposes taxation on all voice services sold for a fixed periodic charge, including the interstate and international calls

at issue here.

This interpretation of the statute is bolstered by Tax Law § 1111 (l)(2), which provides special rules for computing receipts from the sale of mobile telecommunications. This section allows for the separate accounting of bundled services which are non-taxable, if the provider can provide "an objective, reasonable and verifiable standard for identifying each of the components of the charge" -- but specifically applies only if it is "not a voice service" (Tax Law § 1111 [l] [2] [emphasis added]).

Next, Sprint asserts that such an interpretation of the New York Tax Law is preempted by the MTSA. This argument is unavailing. Sprint cites 4 USC § 123 (b) for the presumption that taxes may not be applied to interstate and international calls which are bundled with intrastate calls where the service provider can reasonably identify charges not subject to the tax. Section 123 (b) provides:

> "If a taxing jurisdiction does not otherwise subject charges for mobile telecommunications service to taxation and if these charges are aggregated with and not separately stated from charges that are subject to taxation, then the charges for nontaxable mobile telecommunications services may be subject to taxation unless the home service provider can reasonably identify charges not subject to such tax, charge, or fee from its books and records that are kept in the regular course of business"

(4 USC § 123 [b] [emphasis added]).

This bundling provision expressly opens by respecting

and incorporating state authority, rather than restricting it.
Section 123 (b) anticipates disaggregation only of charges "not
otherwise subject . . . to [state] taxation."  Because the New
York Tax Law imposes a tax on the entire amount of the fixed
monthly charge for voice services, there is no exemption for any
interstate and international component that would even trigger
section 123 (b)'s exception here.  However, no provision of the
MTSA prohibits the taxation of interstate and international
mobile calls.  In fact, Congress eliminated this distinction in
light of advances in mobile telecommunications technology.
Section 117 (b) of the MTSA allows for the taxation of "[a]ll
charges for mobile telecommunications services . . . subject[ ]
to tax . . . by the taxing jurisdictions whose territorial limits
encompass the customer's place of primary use, regardless of
where the mobile telecommunication services originate, terminate,
or pass through."  Accordingly, the AG's interpretation of the
New York Tax Law is not preempted by the federal MTSA.

        As to the AG's cause of action under the FCA, in order
to be liable under the FCA, a party must knowingly make a false
statement or knowingly file a false record.  The FCA defines
"knowingly" to mean "that a person, with respect to information:
(i) has actual knowledge of the information; (ii) acts in
deliberate ignorance of the truth or falsity of the information;
or (iii) acts in reckless disregard of the truth or falsity of
the information" (State Finance Law § 188).

Sprint asserts that there is a reasonable interpretation of the tax law that does not subject bundled interstate and international calls to sales tax and, thus, there can be no knowingly false record or statement, and no valid FCA claim.  This is not the stuff that a CPLR 3211 dismissal is made of.  Even assuming there could be such a reasonable interpretation in the face of this unambiguous statute, it cannot shield a defendant from liability if, as the complaint alleges here, the defendant did not in fact act on that interpretation (see United States ex rel. Oliver v Parsons Co., 195 F3d 457, 463 [9th Cir 1999]).  Otherwise, "[a] defendant could submit a claim, knowing it is false or at least with reckless disregard as to falsity . . . but nevertheless avoid liability by successfully arguing that its claim reflected a 'reasonable interpretation' of the requirements" (id. at 462, n 3).  Sprint will have to substantiate in further proceedings that it actually held such reasonable belief and actually acted upon it.

Sprint argues that in Helio (DTA No. 825010), upon the taxpayer's defeat at the Tax Appeals Tribunal on the issue of taxability of bundled interstate and international mobile telecommunications services, the Department of Taxation and Finance imposed only minimum interest because the audit report stated that "reasonable cause existed" for the taxpayer's position.  But here, the AG alleges that Sprint, which is a much larger service provider, did not act in good faith and that it

did not rely on what it now calls "its reasonable interpretation of the statute" when it made its decision to alter its tax practices. Importantly, although the Tax Appeals Tribunal stated that Helio's similar position was reasonable, that case did not involve the level of deception and fraud alleged on the part of Sprint here.

Nevertheless, the AG has a high burden to surmount in this case. The FCA is certainly not to be applied in every case where taxes were not paid. Further, notice of a contrary administrative position alone is not nearly enough to prove fraud or recklessness under the FCA. There can be no doubt the AG will have to prove the allegations of fraud, that Sprint knew the AG's interpretation of the statute was proper, and that Sprint did not actually rely on a reasonable interpretation of the statute in good faith. But, given the complaint's allegations about the agency guidance and industry compliance with the AG's position, Sprint's payment of the proper amount of sales tax between 2002 and 2005, Sprint's undisclosed reversal of its practices in 2005, and the explicit warnings that Sprint received from the Tax Department, the AG has stated a cause of action for a false claim. On a CPLR 3211 motion to dismiss, the Court accepts facts as alleged in the complaint as true, accords the plaintiff the benefit of every possible favorable inference, and determines whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). It is

premature to dismiss this complaint on such a motion. The AG is entitled to discovery, and there are factual issues that must be fleshed out in further proceedings.

We also hold that retroactive application of the FCA is not barred by the Ex Post Facto Clause of the United States Constitution (US Const Art 1, § 10). In analyzing whether such application of the statute is barred by the US Constitution, we must first consider whether the legislature intended the FCA to establish "civil" proceedings, and if so, whether it is "so punitive either in purpose or effect as to negate the State's intention to deem it civil" (Smith v Doe, 538 US 84, 92 [2003] [internal punctuation and citations omitted]). The FCA provides that a person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a local government, or conspires to do the same; shall be liable to the state . . . for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars" plus treble damages (State Finance Law § 189 [1] [h]).

To assess whether the FCA is punitive, we look to seven factors highlighted by the United States Supreme Court "to determine whether an Act . . . is penal or regulatory in character" (Kennedy v Mendoza-Martinez, 372 US 144, 168 [1963]). These include:

> "[w]hether the sanction involves an
> affirmative disability or restraint, whether

> it has historically been regarded as a
> punishment, whether it comes into play only
> on a finding of *scienter*, whether its
> operation will promote the traditional aims
> of punishment — retribution and deterrence,
> whether the behavior which it applies is
> already a crime, whether an alternative
> purpose to which it may rationally be
> connected is assignable for it, and whether
> it appears excessive in relation to the
> alternative purpose assigned"

(id. at 168-169).

The balance of the factors here weighs in favor of permitting retroactive application. The penalty scheme does not impose an affirmative disability or restraint, and monetary penalties like those imposed by the FCA have not "historically been viewed as punishment" (United States ex rel. Bilotta v Novartis Pharmaceuticals Corp., 50 F Supp 3d 497, 544 [SD NY 2014] [quotation marks and citations omitted]).

Although this Court previously stated that the FCA's penalty and damage scheme serves the aims of punishment, retribution, and deterrence (State of N.Y. ex rel. Grupp v DHL Express (USA), Inc., 19 NY3d 278, 286-287 [2012]), federal courts have determined that the FCA's provision imposing "treble damages carries a compensatory, remedial purpose alongside its punitive and deterrent goals" (Kane ex rel. US v Healthfirst, Inc., 2015 WL 4619686, 2015 US Dist LEXIS 101778, *69 [SD NY Aug 3, 2015 No. 11 CIV. 2325 (ER)]; see also Bilotta, 50 F Supp 3d at 545-546; US ex rel. Colucci v Beth Israel Medical Center, 603 F Supp 2d 677, 683 [SD NY 2009]). As a result, the penalty and damages scheme

of the FCA "does not compel a conclusion that the statute is penal" (Bilotta, 50 F Supp 3d at 546).

Also, the FCA does not regulate conduct that was already a crime, and the penalty scheme may be rationally connected to the nonpunitive purposes of allowing the government to be made whole (see Cook County v United States ex rel. Chandler, 538 US 119, 130-132 [2003]).  Finally, given the compensatory, nonpunitive aims of the statute, the penalties are not unduly excessive.

As the United States Supreme Court stated in Smith, "only the clearest proof will suffice" to "transform what has been denominated a civil remedy into a criminal penalty (538 US at 92 [quotation marks and citations omitted]).  Here, while the treble damages to be imposed are severe, Sprint's arguments do not outweigh the Mendoza factors that weigh in favor of retroactive application, nor do they amount to the "clearest proof" required by Smith.  Therefore, the retroactive application of the FCA does not trigger the Ex Post Facto Clause of the United States Constitution.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

People ex rel. Empire State Ventures, LLC v Sprint Nextel Corp.

No. 127

STEIN, J.(dissenting in part):

In my view, Tax Law § 1105 (b) (2) is an ambiguous statute. Given the procedural course the People have charted here, we are required to interpret any ambiguity in favor of Sprint, as the taxpayer, for the purpose of resolving Sprint's motion to dismiss. Because the Attorney General cannot establish that Sprint's tax filings were actually false in light of this ambiguity, the complaint's principal allegation -- that Sprint violated the Tax Law by failing to collect sales tax due on interstate mobile voice services based upon its purportedly erroneous interpretation of the applicable statute -- must fail and cannot form the basis of a cause of action pursuant to the False Claims Act, Executive Law § 63 (12) or Tax Law article 28. Therefore, I respectfully disagree with the majority insofar as its affirmative answer to the certified question is premised upon its conclusion that the complaint adequately alleges fraud by claiming "that Sprint knew the AG's interpretation of the statute was proper, and that Sprint did not actually rely on a reasonable interpretation of the statute in good faith" (Majority Op, at 14). To the contrary, the complaint has not sufficiently alleged a violation of the Tax Law on this basis in the first instance, let alone a knowing, fraudulent or "bad faith" violation.

- 1 -

However, while the complaint does not set forth viable claims arising out of Sprint's interpretation of the statute, it does adequately allege actual falsity and illegality based upon the method used by Sprint in calculating the portion of its fixed monthly charges that were attributable to interstate mobile voice services.  Accepting as true the complaint's assertions that Sprint's calculation of those charges was essentially arbitrary -- and, therefore, that Sprint's tax filings bore no rational relation to the amount of interstate mobile calls that were actually made -- the complaint sufficiently alleges that Sprint violated the Tax Law, engaged in persistent fraud and illegality under Executive Law § 63 (12) and knowingly made or used false records within the meaning of the False Claims Act.  Thus, although I would answer the certified question in the negative -- the orders below were not properly made -- I would partially affirm the Appellate Division order insofar as it allowed the action to proceed on that narrow ground.

## I.

Tax Law § 1105 (b) (2) is ambiguous because it lends itself to more than one plausible or reasonable interpretation (see Matter of Golf v New York State Dept. of Social Servs., 91 NY2d 656, 662-663 [1998]).  The language that the majority holds to be unambiguous reads as follows:  "[T]here is hereby imposed and there shall be paid a tax of four percent upon . . . [t]he receipts from every sale of mobile telecommunications service

provided by a home service provider . . . that are voice services, or any other services that are taxable under subparagraph [(b) (1) (B)], sold for a fixed periodic charge (not separately stated), whether or not sold with other services" (Tax Law § 1105 [b] [2]).  The subparagraph referenced therein, Tax Law § 1105 (b) (1) (B), subjects to tax "[t]he receipts from every sale . . . of . . . telephony and telegraphy and telephone and telegraph service of whatever nature except interstate and international telephony and telegraphy and telephone and telegraph service and except any telecommunications service the receipts from the sale of which are subject to tax under [sub]paragraph [(b) (2)]."

Applying the canon of construction that a provision of a statute that applies to a specific situation will override a general provision, the majority concludes that subparagraph (b) (1) (B) applies to telephony and telegraphy, generally, whereas subparagraph (b) (2) applies specifically to the sale of "mobile telecommunications" (Majority Op, at 10).  The majority and the Attorney General read subparagraph (b) (2) as providing for the taxation of "every sale of mobile telecommunications services . . . that are voice services sold for a fixed periodic charge" (Tax Law § 1105 [b] [2]) (whether interstate or intrastate) and also allowing for the taxation of "other services that are taxable under subparagraph [(b) (1) (B)]" (id.; see Majority Op, at 10).  The majority concludes that "it is

unambiguous that Tax Law § 1105 (b) (2) imposes taxation on all voice services sold for a fixed periodic charge, including the interstate and international calls at issue here" because, to read the statute otherwise, "would make superfluous the words 'voice services, or any other' in subparagraph (b) (2)" (Majority Op, at 10). The majority's interpretation of the statute is unquestionably appealing in its simplicity. Under that reading, subparagraph (b) (2) provides that mobile voice services are always taxable unless separately stated, regardless of whether they are interstate or intrastate, and the subparagraph (b) (1) (B) limitation on taxation of interstate services does not govern mobile voice services at all.

While I cannot disagree that such interpretation is reasonable, I note that even the Attorney General concedes that subparagraph (b) (1) (B), which differentiates between interstate and intrastate services, continues to exempt certain mobile voice services from taxation. Specifically, the Attorney General acknowledges that "[t]o be sure, (b) (2) itself provides that (b) (1) (B)'s tax rule persists for certain types of mobile service charges" and, therefore, "interstate mobile calls . . . that are not sold for a flat fee, but instead [are] 'separately stated'" (emphasis added) remain taxable under subparagraph (b) (1) (B). Similarly, the Attorney General's complaint explains that, "[f]or overage minutes that are charged to customers on a per-minute usage basis, Sprint and other wireless carriers are required to

collect and pay New York state and local sales taxes <u>only when</u> <u>such calls are intrastate, and are not required to collect and</u> <u>pay them on such calls that are interstate</u>" (emphasis added). Thus, although the majority notes that "[n]o part of subparagraph (b) (2) differentiates between intrastate or interstate and international voice service" (Majority Op, at 10), the Attorney General concedes that some interstate mobile voice services remain nontaxable under subparagraph (b) (1) (B), and the statutory differentiation between intrastate and interstate service persists for such services.

Accepting the Attorney General's concession that the limitation on interstate taxation in (b) (1) (B) continues to apply to at least some mobile voice services, I would hold that Sprint has plausibly read the language in dispute -- "voice services, or any other services that are taxable under subparagraph [(b) (1) (B)]" (Tax Law § 1105 [b] [2]) -- as incorporating the (b) (1) (B) rule for both voice services and any other mobile services. Ultimately, the Attorney General reads subparagraph (b) (2) as taxing all mobile voice services that are sold for a fixed periodic charge, while applying the (b) (1) (B) rule to other types of mobile telecommunications services, whereas Sprint reads the language at issue just slightly more broadly as applying the (b) (1) (B) rules to mobile "voice services, or any other [mobile] services" (Tax Law § 1105 [b] [2]).  Under Sprint's interpretation, the purpose of

subparagraph (b) (2) is to expressly provide that services that are taxable under subparagraph (b) (1) (B) -- text messaging, intrastate voice services, etc. -- remain taxable even if bundled with nontaxable services.  That reading of this less-than-clear statutory text -- while perhaps not the most logical interpretation -- is not unreasonable as a matter of law, particularly in light of the relatively small gap that exists between the parties' interpretations.

Similarly, Tax Law § 1111 (l) (2) can be read in more than one reasonable manner.  That section provides that certain enumerated categories of untaxed nonvoice services, which are bundled with taxable services, are subject to sales tax unless the provider uses "an objective, reasonable and verifiable standard for identifying" and quantifying the amount of each component charge (Tax Law § 1111 [l] [2]).  The parties are in agreement that the statute applies only to nonvoice services. Applying the expressio unius est exclusio alterius canon of statutory construction (see Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health, 84 NY2d 252, 262 [1994]), the Attorney General argues that the legislature's creation of an exception from the general rule for the category of nonvoice services would imply that the category of voice services was not to be excluded from the general rule. That interpretation certainly is reasonable, and reading section 1111 (l) (2) together with section 1105 (b) (2) supports the

Attorney General's assertion that the legislature intended to make all bundled voice services taxable, without permitting carriers to exclude the interstate portion as nontaxable. However, Sprint's alternative construction of section 1111 (l) (2) is also reasonable. Sprint argues that the focus of section 1111 (l) (2) is on nonvoice services and that the purpose of that section is to enumerate the services -- such as internet access -- that are also nontaxable, in addition to interstate voice services. Under Sprint's view, there is no need to include interstate voice services in the section 1111 (l) (2) list because they are already exempt from taxation under subparagraph 1105 (b) (1) (B).

In short, both the Attorney General and Sprint have advanced reasonable interpretations of the statutory language and, because that language is susceptible of more than one reasonable interpretation, it is inherently ambiguous. Indeed, the only other court to consider Sprint's tax strategy under section 1105 (b) deemed the "legal concepts at issue" here "murky" (Louisiana Mun. Police Employee's Ret. Sys. v Hesse, 962 F Supp 2d 576, 589 [US Dist Ct SD NY 2013]).[1] I recognize that

---

[1] That case involved a derivative action commenced by Sprint's shareholders against its directors, alleging that they breached their fiduciary duties and wasted corporate assets by permitting Sprint to adopt the tax policy at issue here, which the shareholders alleged was clearly in violation of New York law. The District Court granted the directors' motion to dismiss for failure to state a claim.

the shareholders' derivative action with which that decision was concerned is distinguishable and involves a completely different body of law from that before us and, further, that the District Court expressly declined to rule on whether Sprint's interpretation of the statute was "reasonable" (id. at 590 n 7). Notwithstanding those distinctions, I agree with the District Court that the legal concepts at issue here -- as well as the statutory language -- are murky at best, and I cannot join the majority decision holding that Tax Law § 1105 (b) is unambiguous.

## II.

A finding that the statute is ambiguous has implications in the Tax Law context that are not present in other procedural contexts. Inasmuch as Sprint is not seeking a tax exemption but, arguing instead, that the "transaction or event is [not] subject to taxation" in the first instance (Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196 [1975]), the tax statute at issue "must be narrowly construed and . . . any doubts concerning its scope and application are to be resolved in favor of the taxpayer" (Debevoise & Plimpton v New York State Dept. of Taxation & Fin., 80 NY2d 657, 661 [1993]). In contrast, if this case had proceeded through the usual administrative process and the same arguments were before us in the context of a CPLR article 78 proceeding involving a challenge to a Tax Department audit and assessment, we could "defer to" the Tax Department as "the governmental agency charged with the responsibility for

administration of [a] statute in [a] case[] where interpretation or application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, and the agency's interpretation is not irrational or unreasonable" (Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d 289, 296 [2011] [internal quotation marks and citations omitted]; see Lorillard Tobacco Co. v Roth, 99 NY2d 316, 323 [2003]).

Here, however, the Tax Department is not before us as a party. Therefore, we cannot defer to its interpretation. Instead, the Attorney General has chosen to pursue Sprint in an action in which its interpretation of the statute is not entitled to deference and we are bound to resolve all ambiguities in Sprint's favor, at least for the limited purpose of determining whether the complaint states a claim and, consequently, whether the courts below were correct in partially denying Sprint's motion to dismiss.[2] In turn, resolving the ambiguity in Sprint's

---

[2] Resolution of the statutory ambiguities in Sprint's favor is necessary only because the Attorney General has chosen to file a superseding complaint in this whistleblower action, rather than await the conclusion of the more typical administrative process. An acknowledgment of the facial ambiguities in the statute by this Court need not prevent the Tax Department from applying its expertise to the detailed labor of fitting tax filings into the language of Tax Law § 1105 (b) (2) (see Lorillard, 99 NY2d at 323) in other matters proceeding through the administrative pipeline, such as Matter of Helio, LLC (2015 WL 4192425 [NY Tax App Trib, July 2, 2015]). Nor would such acknowledgment require the Tax Department to grant refunds to other wireless carriers

favor and adopting its interpretation necessarily means that the complaint fails to adequately allege that Sprint's tax returns were false simply because Sprint did not report receipts from the interstate component of its mobile voice services for sales tax purposes.

## III.

As explained in United States ex rel. Oliver v Parsons Co. (195 F3d 457, 461 [1999], cert denied 530 US 1228 [2000]), upon which the majority relies, the complaint must adequately allege three elements in order to state a cause of action under the False Claims Act:  (1) that Sprint filed the tax records at issue, (2) that those records were actually false -- i.e., that Sprint made a false statement or filed a false record because it incorrectly stated the amount of sales tax owed under Tax Law § 1105 (b) -- and (3) that Sprint acted knowingly in doing so.  Due to the procedural posture of this action, a conclusion that the statute is ambiguous precludes a showing of actual falsity, the second element of the False Claims Act cause of action, as a matter of law.  That is, if the statute is ambiguous, our precedent requires that we interpret it in Sprint's favor in this plenary action, as explained above; and, if the statute is interpreted in Sprint's favor, the complaint fails to adequately

---

who adopted the interpretation advanced by the Attorney General and, therefore, collected and remitted sales tax on the receipts from all interstate mobile voice services.

allege that Sprint's tax filings were based upon an incorrect interpretation of the statute and, therefore, were actually false.  For the same reason, the complaint has not sufficiently stated a claim under Executive Law § 63 (12) and Tax Law article 28 to the extent that those causes of action are based upon allegations that Sprint knowingly relied upon an unreasonable interpretation of Tax Law § 1105 (b).

Actual falsity is a threshold element of a False Claims Act cause of action (see Parsons, 195 F3d at 461).  Actual falsity does not relate to Sprint's mental state; rather, the statutes' "meaning is ultimately the subject of judicial interpretation, and it is [Sprint's] compliance with these [statutes], as interpreted by this [C]ourt, that determines whether its [tax strategy] resulted in the submission of a 'false claim' under the Act" (Parsons, 195 F3d at 463).  In other words, "while the reasonableness of [Sprint's] interpretation of the applicable [statutes] may be relevant to whether it knowingly submitted a false claim, the question of 'falsity' itself is determined by whether [Sprint's] representations were accurate in light of the applicable law," as construed by the Court for the purpose of determining whether the complaint states a cause of action (id. [emphasis added]).

The complaint alleges that Sprint's sales tax filings were false because Sprint "asserted [therein] that it owed less in sales taxes [on interstate voice services] than it really did"

based upon an alleged misinterpretation of Tax Law § 1105 (b).

However, because the statute is ambiguous and its ambiguities

must be resolved in Sprint's favor, the complaint fails to

adequately allege any misinterpretation, regardless of whether

Sprint acted knowingly, recklessly or with deliberate ignorance.

Stated differently, the complaint does not identify any tax

filings that satisfy the element of "falsity," in relation to

Sprint's interpretation of the statute.  Because the complaint

does not adequately plead this threshold element, we need not

reach the question on which the majority focuses, i.e., whether

the complaint sufficiently alleges that Sprint acted "knowingly"

in making its purportedly false statements.

                              IV.

          That said, the determinations of the courts below

should be affirmed, in part, on a different ground.  As the

Attorney General argues, even if the statutes at issue must be

interpreted in this proceeding as permitting Sprint to exclude

from its taxable receipts the portion of its flat-rate plans

attributable to interstate mobile voice services, the complaint

contains other allegations -- sufficient to survive a motion to

dismiss -- that Sprint's tax forms were false in another respect.

Specifically, the complaint alleges that the arbitrary deduction

that Sprint applied to its receipts from interstate mobile voice

services did not, in fact, reflect the interstate calls of

Sprint's customers.  The complaint sets forth detailed assertions

that Sprint calculated the portion of its calls that were interstate by arbitrarily applying a percentage used to calculate an unrelated federal surcharge at times, but that Sprint did not modify its allocations when the federal government changed the percentage used to calculate the surcharge, nor did Sprint consistently adhere to the percentage allocations.  In that regard, the Attorney General contends that Sprint did not even attempt to identify the interstate component of its mobile voice services, much less adhere to the disaggregation requirements set out in federal and state law and, thus, it violated the Tax Law in the manner in which it allocated the percentage of its fixed monthly charges that was attributable to interstate mobile voice service.  On this appeal, which involves a CPLR 3211 motion to dismiss, "[w]e accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory . . . [because] the criterion is whether the proponent of the pleading has a cause of action, not whether [it] has stated one" (Leon v Martinez, 84 NY2d 83, 87-88 [1994] [internal quotation marks and citations omitted]). While plaintiffs may not have expressly pleaded any claims based on Sprint's failure to use an objective standard as required by state and federal laws addressing the proper unbundling of its fixed monthly charges, the allegations to support such a claim are set forth in the complaint and establish that plaintiffs have

viable causes of action under the False Claims Act, Executive Law § 63 (12) and Tax Law article 28.

## V.

In sum, Tax Law § 1105 (b) (2) is ambiguous because it can be reasonably interpreted in more than one manner and, inasmuch as it is a tax statute, section 1105 (b) (2) must be interpreted in Sprint's favor for purposes of determining whether the complaint adequately states a cause of action.  If Sprint's interpretation is deemed correct, as it must be, the complaint necessarily fails to state a cause of action by asserting that Sprint filed false returns simply by virtue of the fact that the returns are consistent with that interpretation (whether Sprint believed the interpretation to be correct or not).  Therefore, the causes of action under the False Claims Act, Executive Law § 63 (12) and Tax Law article 28 cannot be sustained on the basis of the Attorney General's allegation that Sprint misinterpreted the Tax Law.  Those causes of action could, however, proceed on the limited basis that Sprint's tax forms were knowingly false, illegal and violative of the Tax Law because Sprint's arbitrary method of calculating its deduction did not have any rational connection to the amount of interstate calls actually made by Sprint's customers.  Accordingly, I would answer the certified question in the negative and would modify the Appellate Division's order by dismissing so much of the False Claims Act, Executive Law and Tax Law causes of action that were based upon

Sprint's purportedly erroneous interpretation of Tax Law § 1105

(b), and insofar as modified, would affirm the order allowing the

claims to proceed on the narrow ground set forth in this opinion.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order affirmed, with costs, and certified question answered in
the affirmative.  Opinion by Chief Judge Lippman.  Judges Pigott,
Abdus-Salaam and Fahey concur.  Judge Stein dissents in part in
an opinion.  Judge Rivera took no part.

Decided October 20, 2015